STATE OF NEBRASKA, APPELLEE, v. FRANCIS S. CAHA, APPELLANT.

165 N. W. 2d 362

Filed February 28, 1969.   No. 37009.

A. Q. Wolf and Bennett G. Hornstein, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

The defendant was convicted in the district court for Douglas County of the crime of statutory rape and sentenced to a term of imprisonment. The defendant has appealed.

There is no contention that the evidence is insufficient to sustain the verdict. In fact, there is little dispute in the facts except that defendant asserts that the prosecutrix, a girl of the age of 14 years, voluntarily participated and that there was no penetration. Whether or not the prosecutrix voluntarily participated is not a material issue in the case. Whether or not there was penetration is a material issue on which the evidence is in conflict. On the issue of penetration, the prosecutrix testified that there was, which is supported by the evidence of a medical expert that male sperm was found in her vaginal canal shortly after the incident occurred. Defendant denies that there was any penetration which is supported to some extent by the testimony of the medical expert to the effect that the hymen of the prosecutrix was not ruptured. The medical expert further stated that a ruptured hymen does not always result from penetration. Statements made by the defendant to a police officer in which he admitted sexual relations with prosecutrix were received in evidence, the admissibility of which constitutes one of the assignments of error in the appeal.

The evidence shows that defendant persuaded or forced the prosecutrix to enter his car a short distance from her home. Defendant was a stranger to her and she described him to the police shortly after the occurrence. She described him primarily as wearing an army jacket. She had difficulty in describing defendant other-

wise because of darkness and poor eyesight. She described the car as a two-door 1961 or 1962 red Chevrolet. The interior was black with black headrests. With this information, the police searched for a car with the description given. Such a car was found parked in a parking lot on the north side of the Taylor Florist Shop, although it was a later model than stated by the prosecutrix. The investigating officer observed an army fatigue jacket on the front seat of the locked car by looking through the window. The car belonged to the defendant who was employed by the Taylor Florist Shop.

The officer, Detective Sergeant John B. Gallagher, went into the Taylor Florist Shop and found that defendant worked there. Gallagher waited for defendant to return from making a delivery at which time he was asked to come outside. Gallagher testified that he talked with the defendant about his car, his family, and matters of general interest. He then gave the Miranda warnings which he recited on the witness stand in which he made no mention of defendant's right to remain silent. Defendant then told the officer about picking up the prosecutrix and engaging in sexual relations with her down near the Missouri River, some distance from the point of the pickup. He said the girl voluntarily participated in the sexual act.

Defendant was taken to the police station where, admittedly, the Miranda warnings were properly given before he was interrogated. The contention here is that Gallagher talked to defendant in his police cruiser car, that he was then in custody, and the Miranda warnings were required to be given at that time. We point out, however, that Gallagher had found a car meeting the description as given by the prosecutrix. He obtained the name of the owner of the car and proceeded to locate the owner without any information connecting it or its owner with the crime of statutory rape. He says he gave the Miranda warnings before inquiring about the alleged rape and, when asked to repeat what he

told the defendant in the way of warnings, failed to mention that defendant had a right to remain silent.

The issue here is whether or not the action of the officer was investigative or an in-custody interrogation. If it was purely investigative, the Miranda warnings are not required to be given. If it was in-custody interrogation, they are required to be given. Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974. In the last-cited case it is said: "In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

In Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, the court said: "Nothing we have said today affects the powers of the police to investigate 'an unsolved crime,' * * * by gathering information from witnesses and by other 'proper investigative efforts.' * * * We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer."

Officer Gallagher testified that he asked defendant to come outside the flower shop in order that he might

talk to him. They sat in the cruiser car which was parked beside defendant's car in the parking lot. The officer testified that defendant was under arrest, but the time of the arrest is not stated. Defendant was never told, so far as the record shows, when he was placed under arrest. Before asking the defendant about having the prosecutrix in his car the night before, the officer positively asserts that he gave the Miranda warnings in accordance with the Rights Advisory Form used by the Omaha Police Department. He was then asked what was contained in the Rights Advisory Form and he left out the requirement that defendant be informed of his right to remain silent. The officer testified that after giving the Miranda warnings, he said: " 'Tell me about the girl you had in your car last night," and defendant told the story to which the officer testified. With reference to the nature of the interrogation, the officer was asked: "Now at the time you talked to Mr. Caha did you consider him a suspect?" Answer: "Only from the description of the car, and then after I talked to him I considered him a suspect." The officer's answer is supported by the record and fixes the time of the arrest as subsequent to defendant's statement. Until that statement was made, the officer had no information whatever that defendant was the driver of the car that participated in the alleged crime; in fact, he did not know that he had found the right car. The evidence complained about was discovered during the investigative process which shifted to the accusatory process only after defendant's statement to the investigating officer. True, the officer says he gave the Miranda warnings. Whether he thought they were necessary, or whether he gave them out of an abundance of caution, or for some other reason, is not material here. In our opinion, the evidence was acquired during the investigative process and does not relate to the evils that Escobedo and Miranda were intended to correct. Here the defendant, so far as the evidence shows, was not in custody nor other-

wise deprived of his freedom until after his admissions were made to the officer. To hold that defendant in this case was subject to the warnings of the Miranda case would move the application of the rule from the point where the evidence of guilt focused on the defendant to any point where the defendant was interrogated in the investigative process, a rule that finds no support in any of the cases, state or federal.

The defendant was interviewed in the cruiser car as a matter of convenience. He was under no restraint whatsoever. The time of defendant's arrest is a question of fact. He was not informed formally at any time that he was under arrest. The officer had no basis for an arrest until defendant made his statement. He was interviewed only because his car fitted the description given by the prosecutrix. He was asked to tell the officer about the girl he had in the car the night before and he volunteered a complete statement. Crimes such as the one before us are usually not committed in the presence of eyewitnesses and if the rule in Miranda is to extend into the investigative process, it is more than a protection of the defendant's constitutional rights; it becomes a shield against any prosecution at all. The defendant at the time he gave his statement had not been charged with any crime, he was not in a police station, nor in any other place with a police atmosphere. It is clear that he was being investigated regarding an unsolved rape and not for the purpose of obtaining a confession. It does not involve the deliberate interrogation of a defendant after the initiation of judicial proceedings against him, nor does it involve the pressures of the police or the police station where one may be in custody, held incommunicado, or subjected to improper coercive psychological approaches.

The evidence in this case shows that the defendant observed this 14-year-old girl board a bus in the business district of Omaha. He followed the bus until he saw the prosecutrix alight therefrom. He then followed

her for 2 blocks and then forced or enticed her into his car. It was only through an effective police investigation stemming from a general description of the car that the police detective found the car that led him to its owner, the defendant. He talked with the defendant only because the car appeared similar to the description given by the prosecutrix. In continuing the investigation, the defendant told the investigator that he had picked up the girl the night before, stating that the engaging in sexual relations was mutually agreeable, and that he did not think there was anything wrong in what he did.

Defendant asserts that his constitutional rights were violated. We point out, however, that the victim has some constitutional rights which are to be protected. With only two parties to the incident and, the girl being unable to identify her assailant, it would defeat the purpose of police investigation if Miranda applied to the investigative process. The investigative process is not subject to these rules, otherwise rapists could roam the streets at will through the simple expedient of requiring that the Miranda warnings must be given to everyone in the course of the investigation for fear that a person investigated may make statements subsequently found to be incriminating. The protection of the right of nonincrimination has not been so extended in either the federal or state courts.

The foregoing is supported by the following cases: In United States v. Agy, 374 F. 2d 94 (1967), it was said: "These admissions need not have been excluded by the district court because the doctrine of Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) applies only to in-custody interrogation, * * *." In People v. Cotter, 63 Cal. 2d 386, 405 P. 2d 862, the California court said: "The more crucial conversation (the fourth) with the officers in the police car, was admissible for the further reason of absence of one of the conditions deemed essential to render the statement in-

admissible under the rules laid down in Escobedo, Dorado and Stewart. Clearly, the statement made in the police car was not the product of a process of interrogation aimed at eliciting incriminating statements from defendant. The police merely asked him what had happened at the Buus residence. They were affording him an opportunity which police officers normally and routinely offer to any person whom they are taking into custody to give any explanation of his conduct which he may desire to give. It is a routine means of commencing an investigation." See, also, People v. Jacobson, 63 Cal. 2d 319, 405 P. 2d 555. In Miranda, the court said: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, *supra*. Since Miranda, the case has been interpreted very restrictively by the federal courts. The requirement of the Miranda warnings has been limited to cases of in-custody interrogation, to wit, cases in which the defendant has been arrested or detained and subjected to informal interrogation by the police. No case has been cited, nor have we found one, that requires that the Miranda warnings be given in such a case as the one before us.

The trial court held a hearing during the trial on a motion to suppress the evidence. After taking evidence and determining all the facts, it held, in effect, that the evidence was voluntary and admissible, and not a violation of the rules in the Miranda case. We can see no reason for interfering with the court's findings on this point.

Defendant claims error in the failure of the trial court to instruct the jury that it could find the defendant guilty of a lesser crime, assault with intent to commit rape, since the evidence was in conflict as to whether or not a penetration was accomplished. The defendant requested no such instruction. It has long been the rule

in this state that it is not error not to instruct on lesser offenses in the absence of request. Haynes v. State, 137 Neb. 69, 288 N. W. 382; Mulder v. State, 152 Neb. 795, 42 N. W. 2d 858. This contention is without merit.

We find no prejudicial error in the record and the judgment of the district court is affirmed.

AFFIRMED.