STATE OF NEBRASKA, APPELLEE, v. OLIVER R. DUBANY, APPELLANT.

167 N. W. 2d 556

Filed April 25, 1969. No. 37095.

William S. Padley, for appellant.

Clarence A. H. Meyer, Attorney General, and James J. Duggan, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, SMITH, McCOWN, and NEWTON, JJ., and KOKJER, District Judge.

KOKJER, District Judge.

The amended information filed in this case charged that on July 8, 1967, in Cherry County, Nebraska, the defendant Oliver R. Dubany unlawfully operated or was in actual physical control of a motor vehicle while he was under the influence of alcoholic liquor.

At the trial, officer C. L. Zurcher testified that at approximately 4:15 p.m., on July 8, 1967, on U. S. Highway No. 20 about 10 1/10 miles west of Wood Lake, in Cherry County, Nebraska, he saw a pickup truck in the ditch on the lefthand side of the road; that one man was in the pickup under the wheel; that the gears were in operation, the wheels were turning, and the sand was flying; that the pickup was jumping up and down, backwards, and forward, but was not actually going anywhere; and that the pickup appeared to be stuck in the sand. Officer Zurcher asked the man for his driver's license and, upon receiving it, checked it over. He then asked the man if he had been drinking, and the man said, "Yes." The officer identified the man as the defendant Oliver R. Dubany. He asked the defendant to shut off the switch and get out of the car, which he did. The officer then asked defendant to go with him to the patrol car. He observed defendant walking and helped him as he was having trouble walking or staggering. Defendant appeared not to be feeling well. His eyes were bloodshot, his speech was slurred, and he had a very strong odor of alcohol on his breath. After defendant was in the patrol car he had trouble staying awake and, in fact, he fell asleep before officer Russell Luth, who had been called by radio, came in his patrol car to take him to Valentine. Officer Zurcher further testified that in his opinion defendant was under the influence of alcoholic liquor.

Officer Luth observed defendant as they put him in his patrol car, as he took him to Valentine, where a sample of defendant's blood was taken, and when he was placed in jail. In his opinion defendant was intoxicated. The blood sample was tested as provided by statute and contained .27 percent of alcohol by weight.

After the State completed its case-in-chief the defense adduced testimony of defendant and an employee, Lloyd DeCent, to the effect that defendant had not been drinking any alcoholic liquor up to the time he left Wood

Lake earlier in the afternoon of July 8, 1967. Defendant testified he left Wood Lake in the pickup while the employee DeCent and another regular employee, Ed Murray, and two local boys who had been hired to help, were loading a larger truck with store fixtures which defendant had purchased. Defendant stated that as he proceeded west on U. S. Highway No. 20 he came to a curve and there met a pickup coming from the west which was pretty well across the white line on the paving; and that defendant tried to give him some room and got the front wheel of his pickup off into the sand and went down into the "bar pit" where he became stuck. He was unable to get his pickup out. It was hot and he had nothing to drink, so he got to nibbling on a quart bottle of whiskey which contained a half pint or "maybe a little less," that he had in his pickup. He then threw the empty bottle away. He said that after he drank the liquor he did not operate the pickup because there was no way he could get loose.

Witness DeCent testified that after they finished loading and paid the two boys he drove the larger truck west on U. S. Highway No. 20 and came to the place where defendant was stuck. He and the other employee, Ed Murray, tried to get defendant's pickup out but it was impossible. When they arrived defendant had been drinking. He said it was "an awfully terrible hot day that afternoon." DeCent asked defendant if he had been drinking; and defendant replied that he got thirsty, that he had found a bottle of whiskey in the car, and that he took a drink out of it to try to quench his thirst. The state trooper arrived about 8 or 10 minutes after DeCent and Murray. The trooper at that time found defendant behind the wheel, gears of the pickup in operation, the wheels turning, the sand flying, and the pickup jumping up and down, backwards and forward, but not actually going anywhere.

Richard E. Sokol, who runs a service garage, was called to the scene by the patrolman. He testified that

he had to use a winch to get the pickup out of the sand.

After the defense rested the State called Garret Luth to the stand for rebuttal testimony. Defendant objected on the ground that his name had not been endorsed on the information as a witness. The objection having been overruled, Luth testified that at about 10 or 10:30 the morning of July 8, 1967, he and another boy had been asked by Mr. Dubany to help load shelves and furniture from a store in Wood Lake. He saw defendant and another man two times in the morning drinking whiskey and milk. At noon he went to lunch with defendant and the others. He said that defendant did not eat too much and, as they were leaving the cafe, defendant bought a fifth of whiskey. In the afternoon he again saw defendant drinking whiskey and milk. Just before he left, the defendant was staggering, had a hesitant voice, and smelled of whiskey; and, in the opinion of the witness, was under the influence of alcoholic liquor.

The jury found the defendant guilty. In a later hearing before the court it was found that this was a third offense. Defendant's motion for a new trial having been overruled, he filed this appeal.

Summarized and stated in different order, defendant's claims of error are that: (1) The court instructed the jury that the word "operate," as used in the statute, means the actual physical handling of the controls of a vehicle by a person; (2) in receiving in evidence the results of the blood test and limiting consideration of it to the time of taking; (3) in allowing the State to introduce the testimony of Garret Luth, claiming that his evidence was not rebuttal but constituted a change in the prima facie case, and that his name had not been endorsed on the information; (4) in refusing to grant a continuance after receiving the testimony of Luth; and (5) in admitting the testimony of patrolman Zurcher regarding statements made by defendant without warning him as to his constitutional rights.

Had this case involved an example such as was re-

ferred to in defendant's brief of a man who, while in-
toxicated, sat in a broken down vehicle in a junk yard
with his hands on the steering wheel and gear shift, de-
fendant might have good reason for his assigned error
No. 1. Under the facts as developed by the evidence in
this case, however, the jury properly found, under the
definition complained of, which was taken from Uldrich
v. State, 162 Neb. 746, 77 N. W. 2d 305, and cited later
in Waite v. State, 169 Neb. 113, 98 N. W. 2d 688, that
defendant was operating a motor vehicle and was in the
actual physical control of it at the time patrolman
Zurcher saw him.

Defendant sought to prove that he had nothing to
drink before he became stuck in the sand. His theory
was that the court limited consideration of the blood test
to the time the sample was taken after his arrest; and
that this was error because defendant's operation of the
vehicle had ended before he became intoxicated. This
claim of error falls with his theory that he was not op-
erating a motor vehicle at the time patrolman Zurcher
first saw him. By his own testimony he had then con-
sumed about half a pint of whiskey. In the opinion of
the two patrolmen he was intoxicated.

As to claimed errors Nos. 3 and 4, the testimony of
Garret Luth was clearly offered to rebut the testimony
of defendant that he had not had a drink of intoxicating
liquor before he became stuck in the sand. The rule
which requires the endorsement of the names of wit-
nesses on the information does not apply to rebuttal
witnesses (Griffith v. State, 157 Neb. 448, 59 N. W. 2d
701); nor does it require a continuance after a rebuttal
witness testifies. The testimony did not change the
prima facie case on any theory except the untenable one
advanced by defendant. The court committed no error
in denying a continuance.

As to the fifth assignment of error, no warning as to
defendant's constitutional rights were given to him by
patrolman Zurcher. The only statement of defendant

mentioned by the patrolman in his testimony was defendant's answer of "Yes" to the inquiry as to whether he had been drinking. This inquiry was made when defendant was still in his own truck, not in custody, and while he was under no coercion. In on-the-scene investigations the police may interview any person not in custody and not subject to coercion for the purpose of determining whether a crime has been committed and who committed it. In Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974, the Supreme Court of the United States wrote: "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." Defendant's claim that his constitutional rights were invaded is without foundation.

No error is found in the record and the judgment of the district court should be and is affirmed.

AFFIRMED.