**STATE of Iowa, Appellee,**

v.

**Lena Veronica McDONALD, Appellant.**

**No. 54436.**

Supreme Court of Iowa.

Sept. 27, 1971.

Ralph J. Bellizzi, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Richard N. Winders, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

MOORE, Chief Justice.

On trial to the court defendant, Lena Veronica McDonald, was found guilty and ordered to pay a $25 fine or serve two days in jail for failure to leave her name and address on an automobile with which her car had collided. She has appealed. We affirm.

Code section 321.264 provides: "Striking unattended vehicle. The driver of any vehicle which collides with any vehicle which is unattended shall immediately stop and shall then and there either locate and notify the operator or owner of such vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle or shall leave in a conspicuous place in the vehicle struck a written notice giving the name and address of the driver and of the owner of the ve-

hicle doing the striking and a statement of the circumstances thereof."

Under defendant's claim of insufficient evidence we interpret the facts in the light most favorable to the State. The record discloses that as Lucille F. Morley came out of the Safeway store on Southwest Ninth Street in Des Moines about 4 p. m. March 25, 1970 she saw a lady (on trial identified as defendant) back her car into the middle of the Morley dark green automobile and start to drive away. Mrs. Morley rushed to her car and observed the left back door had been dented. When defendant saw Mrs. Morley taking her license number defendant started backing up but then drove away. Shortly thereafter Mrs. Morley's husband reported the incident to the police and gave them the automobile license number.

Cross-examination of Mrs. Morley by defendant's trial counsel, Mr. Shephard, includes:

"Q. Do you know if Mrs. McDonald knew that she hit your automobile? A. Yes, she backed up until she touched it. She must have known she hit it.

"Q. Well, if the damage was $39.00 and the impact wasn't very big, isn't it possible—A. She saw me writing down the license number. She must have known something happened."

Police officer Joseph Dunham was assigned to investigate the reported incident. He went to defendant's Des Moines residence the same afternoon and parked his police car in the driveway near the door of defendant's mobile home.

The trial transcript includes the following:

"Q. Then what happened, sir? A. I went up to the door, and I knocked on the door, and Mrs. McDonald came to the door. She came outside the trailer with a handful of dog food. I asked her if she had been driving her car approximately 4 p. m. that date.

"MR. SHEPHARD: Your Honor, I am going to object to the witness stating anything that Mrs. McDonald told him after these questions on the grounds that he did not give her the Miranda Warning as to her rights.

"THE COURT: At this time your objection is overruled. You may continue.

"A. I asked her if she had been driving her car on that date in the area of SW Ninth and Leland, the Safeway Food Store parking lot. She stated that she had been driving her car in that area at approximately that time.

"Q. Then what happened? A. I asked her if she had been involved in an accident. At that time she yelled very loud, 'Oh, no, I wasn't. I didn't hit anybody.' I then asked her for her operator's license. She went into the trailer, came back out with a purse. It was raining, snowing, cold at the time. I asked her to have a seat in the back of the police car so I could investigate the accident. This she did.

"Q. Yes, sir, then what happened? A. She sat in the right rear passenger side of my car. I asked her at this time for her driver's license. She started to get them out of her pocket book, and she asked me what I was going to do with them. * * * I told her that I needed it for my report, and she said, 'Are you going to give my name to the other fellow's insurance company?' And I answered too quickly. What I meant to say was, 'I am going to give the name to the other party.' However, I said yes. At that time she drew her purse back to her. She stated, 'I am not going to show you my driver's license.' I told her, 'I was sent here to investigate an accident and that's what I am going to do.' I told her that if she would not identify herself and show me her driver's license that I would have to place her under arrest for failure to leave her name and address at the scene of an accident. She again started yelling and screaming. She wanted to know why the person's car who was hit wasn't down here instead of

me yelling at her. I advised her that this was not this other party's job. It was my job to investigate this accident. She wanted to know why this party did not follow her from the store to her residence. I again advised her this was not their job. I again asked her for her driver's license, and she said, 'I am not going to give you my driver's license. You will have to take me to jail.' At that time I placed her under arrest for failure to leave name and address at the scene of an accident."

It was defendant's statutory duty to display her operator's license upon officer Dunham's demand. Code section 321.190.

Officer Dunham testified he observed dark green paint on the rear bumper of automobile owned by defendant and her husband.

■ I. Defendant asserts the objection set out above should have been sustained. We do not agree. The record clearly shows it was made to an investigatory question propounded at defendant's home and that she had not been charged with any offense or taken into custody. She had not been deprived of her freedom of action in any significant way.

The evil aimed at in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, is incommunicado interrogation of individuals in a police dominated atmosphere. Miranda was arrested by the police and taken to a special interrogation room where without any warning of his right to counsel or his privilege against self-incrimination he signed a confession and was later convicted of kidnapping and rape. At page 481 of 384 U.S., page 1631 of 86 S.Ct., page 727. of 16 L.Ed.2d, it is said: "This Court, while protecting individual rights, has always given ample latitude to law enforcement agencies in the legitimate exercise of their duties. The limits we have placed on the interrogation process should not constitute an undue interference with a proper system of law enforcement. As we have noted, our decision does not in any way preclude police from carrying out their traditional investigatory functions."

In State v. Heisdorffer, Iowa, 164 N.W. 2d 173, 175, we say: "We do not believe Miranda should be interpreted to prevent an investigation to determine whether defendant had committed a crime subjecting him to arrest. The erratic path of the car and the smell of alcohol on defendant's breath furnished good cause to suspect defendant might be guilty of operating a motor vehicle while intoxicated. The tests were reasonably necessary to enable the patrolman to decide whether defendant should be arrested. The situation did not present an incommunicado interrogation of a person in a police dominated atmosphere condemned by Miranda."

In further support of our holding in this division see State v. Church, Iowa, 169 N.W.2d 889, 891; United States v. Essex, D.C.Tenn., 275 F.Supp. 393 (reversed on other grounds, 6 Cir., 407 F.2d 214) where police conducted an investigative interview in defendant's home; People v. Merchant, 260 Cal.App.2d 875, 67 Cal.Rptr. 459, where two police officers interviewed defendant at his front screen door; People v. Schwartz, 53 Misc.2d 635, 279 N.Y.S.2d 477, where two and a half hours after an accident a police officer questioned defendant at her home and issued a summons for leaving the scene of an accident; State v. Bower, 73 Wash.2d 634, 440 P.2d 167, statements made to police at defendant's home and while riding in a police car and State v. Caha, 184 Neb. 70, 165 N.W.2d 362, where defendant was located through description of his car and was questioned by officer in police car. In each the court held the questioning was during the investigative process and that the Miranda warnings were not required. See also Anno. 31 A.L.R.3d 565; Wigmore on Evidence, Vol. III, section 826a, pages 383–386.

We do not reach or decide the State's contention Miranda warnings are not required in simple misdemeanor cases. We are aware that problem will be squarely presented to this court in a pending appeal.

II. Defendant next argues the evidence was insufficient to create a fact question on knowledge her car had collided with another. The legal propositions involved are thoroughly discussed in State v. Christopher, Iowa, 176 N.W.2d 777, and need not be repeated here. We hold the testimony, including defendant's voluntary statements made in conjunction with refusal to display her driver's license, amounts to substantial evidence supporting the trial court's finding defendant was aware her automobile had collided with another.

We have considered defendant's assigned errors and find no ground for reversal.

Affirmed.

All Justices concur except BECKER, J., who concurs in the result, and RAWLINGS, J., who dissents from Division II.