STATE OF NEBRASKA, APPELLEE, V.
ROBERT C. MATTAN, APPELLANT.

300 N.W.2d 810

Filed January 9, 1981. No. 43370.

David A. Svoboda and Daniel P. Chesire of Kennedy, Holland, DeLacy & Svoboda for appellant.

Paul L. Douglas, Attorney General, Donald L. Knowles, Douglas County Attorney, and Robert J. Yaffe for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

The defendant, Robert Mattan, was convicted of misdemeanor motor vehicle homicide and sentenced to 6 months probation, fined $500 and costs, and ordered to attend a 3-day driving school. The defendant was charged with unintentionally causing the death of a pedestrian while operating a motor vehicle in violation of Neb. Rev. Stat. §§ 39-615(1) and 644 (Reissue 1978). The Douglas County court found the defendant was in violation of both statutes. The District Court affirmed the conviction based solely on defendant's violation of § 39-644 because the evidence showed the victim was not in the crosswalk at the time of the accident.

The defendant has appealed and contends the evidence was insufficient to support the conviction; the trial court erred in admitting testimony concerning a conversation between the defendant and a police officer during the investigation of the accident; and that § 39-644 is unconstitutional.

The evidence shows that the accident happened at about 8 a.m. on October 22, 1979, near the intersection of 17th Street and Capitol Avenue in Omaha, Nebraska. The traffic signal for the crosswalk on the north side of this intersection displays a continuous "walk" indication. It was overcast and dark at the time and traffic was heavy. Rain mixed with heavy snow was falling and the streets were "slushy" but not slippery.

The defendant was driving a Ready-Mix cement truck west on Capitol Avenue. At the intersection, he turned north onto 17th Street which is 60 feet wide and is divided into six traffic lanes. The defendant told a police officer at the scene of the accident that, "just as he got even with the crosswalk or shortly thereafter, he said he heard a thump. Then he said a split second later, he felt a bump on his tandem wheels. Then he said he had to pull down the street several feet, so he could see in his rearview mirror as to see if and what he did hit. Then he said he saw the girl laying in the street, and so immediately, he pulled over to the curb, and got out."

An eyewitness to the accident testified that she saw the left front fender of the truck strike the victim when the victim was a foot or 2 north of the crosswalk. After being struck by the fender, the victim "flew up" against the headlight, then fell down and "kind of" rolled over. The wheel of the truck passed over the head of the victim. The point of impact was marked on a diagram used in the county court, but the diagram does not appear in the record.

Photographs taken by the police officers at the scene of the accident were received in evidence. These photographs show the victim's scalp, which was torn off in the accident, situated in the third traffic lane from the east, near the center of the street, and 23 feet north of the crosswalk. The victim's body was found further north. An umbrella was found between the scalp and the crosswalk.

The parties stipulated that the victim died as a result of multiple injuries suffered in the accident.

The defendant was convicted of unintentionally causing the death of the victim while operating a motor vehicle in violation of § 39-644, which requires a driver to "exercise due care to avoid colliding with any pedestrian upon any roadway . . . ." Although the evidence was not as complete as it might have been, it was sufficient to permit the trier of fact to find beyond a rea-

sonable doubt that the defendant failed to exercise due care because he failed to see a pedestrian who was in plain sight. The victim was plainly visible to the eyewitness who saw the accident while she was walking on the sidewalk on 17th Street. After the accident, when the defendant finally stopped the truck and looked back, he had no difficulty seeing the victim's body lying in the street.

The fact that the defendant was completely unaware of the victim's presence until after the truck had passed over her body permits an inference to be drawn that he failed to maintain a proper lookout, and thus failed to exercise due care to avoid colliding with a pedestrian.

The ultimate fact here was the failure to exercise due care.The evidence was sufficient to support a finding beyond a reasonable doubt that the defendant failed to maintain a proper lookout. The failure to maintain a proper lookout was a failure to exercise due care. The evidence was sufficient to sustain the conviction.

The evidence shows that when Officer Paul M. Rust arrived at the scene of the accident, the defendant was seated in a police cruiser. Officer Rust took the defendant to a different cruiser so that he could obtain the necessary information about the accident. The defendant was not under arrest so Officer Rust did not give him any warning as to his constitutional rights before asking about the accident. The defendant contends the officer should not have been permitted to testify as to the defendant's statements concerning the accident because of the failure to comply with the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The *Miranda* decision recognized a distinction between custodial interrogation and preliminary investigation. The court stated: "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such

situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." *Id.* at 477-78.

Officer Rust, at the time of the questioning, was engaged in the investigative process. As we stated in *State v. Bennett*, 204 Neb. 28, 35, 281 N.W.2d 216, 220 (1979), "The Miranda procedures . . . were not meant to preclude law enforcement personnel from performing their traditional investigatory functions such as general on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the factfinding process."

In *State v. Dubany*, 184 Neb. 337, 167 N.W.2d 556 (1969), the defendant raised the same issue of the failure to give a Miranda warning. In that case, the defendant was discovered in an automobile that had become stuck in a ditch. The automobile was in gear and jumping up and down, but not moving forward. The officer approached the vehicle and asked the driver if he had been drinking, to which the driver replied, "Yes." We held the defendant's constitutional rights had not been violated and noted: "In on-the-scene investigations the police may interview any person not in custody and not subject to coercion for the purpose of determining whether a crime has been committed and who committed it." *Id.* at 342, 167 N.W.2d at 559.

The fact that the defendant was in a police cruiser at the time of the questioning did not make the conversation a custodial interrogation. In *State v. Caha*, 184 Neb. 70, 165 N.W.2d 362 (1969), a police officer questioned the defendant in his patrol car and asked him to explain his relationship with the prosecutrix. The defendant thereupon volunteered incriminating information as to having had sexual relations with the girl in question. This court ruled that the conversation was not the product of a process of interrogation aimed at eliciting a confession and that the defendant's rights had not been violated. See, also, *United States v. Tobin*, 429 F.2d 1261 (8th Cir. 1970).

The defendant's contention that § 39-644 is unconstitutionally vague is without merit. The applicable rule was stated in *Rose v. Locke*, 423 U.S. 48, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975), as follows:

"It is settled that the fair-warning requirement embodied in the Due Process Clause prohibits the State from holding an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed.' *United States v. Harriss*, 347 U.S. 612, 617 (1954) .... But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness for '[i]n most English words and phrases there lurk uncertainties.' *Robinson v. United States*, 324 U.S. 282, 286 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. *Nash v. United States*, 229 U.S. 373 (1913); *United States v. National Dairy Corp.*, 372 U.S. 29 (1963). All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Id.* at 49-50.

The definition of an act forbidden by statute, but not defined by it, may be ascertained by reference to the common law. *State v. Eynon*, 197 Neb. 734, 250 N.W.2d 658 (1977). Due care is a well-understood term meaning the absence of negligence.

The rule is well established in this state that a driver must keep a lookout so that he can see what is plainly visible in front of him, and a failure to do so is negligence as a matter of law. The presence of snow or other conditions which interfere with visibility require the driver to use care commensurate with the situation.

Upon the facts in this case, a contention that the meaning of due care was unconstitutionally vague cannot be sustained.

The judgment of the District Court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

For the reasons more particularly set out hereinafter, I must respectfully dissent from the opinion of the majority in this case.

I believe the evidence in this case is insufficient to convict the appellant of the crime charged. As noted by the majority, the defendant was charged with unintentionally causing the death of a pedestrian while operating a motor vehicle in violation of Neb. Rev. Stat. § 39-644 (Reissue 1978). All the evidence relied upon by the State to obtain the conviction was circumstantial.

Section 39-644 requires that "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway . . . ." The statute, of course, must mean something more than imposing absolute liability upon a driver to avoid colliding with a pedestrian. The act, of necessity, presumes that the pedestrian is in a place and walking in a manner that a driver exercising due care can avoid colliding with the pedestrian. The record is totally devoid of any evidence as to where the pedestrian was moments before being struck by the truck. While it is true that a witness observed the truck striking the victim, the witness was unable to testify as to where the victim was just before being struck, and testified that the weather was "pretty bad."

We have previously held that "a defendant may not be convicted except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which the accused is charged." *State v. Doyle,* 205 Neb. 234, 238, 287 N.W.2d 59, 62 (1980). Not only is the driver of a motor vehicle obligated to operate a motor vehicle so as to avoid colliding with a pedestrian upon a roadway, but, likewise, the pedestrian is called upon to exercise due care to avoid a collision with the motor vehicle. See Neb. Rev. Stat. §§ 39-643(1) and 642(2) (Reissue 1978). The evidence in this case is not sufficient to eliminate the possibility that the victim suddenly darted in front of the vehicle. As a matter of fact,

there was some evidence that the victim may not have seen the vehicle because her vision was obscured by an umbrella she was holding. Likewise, there is some indication that she may have been running in a diagonal direction and not within the crosswalk. Any one of those factors, if true, might be sufficient to exonerate the appellant in this case. As we said in *State v. Doyle, supra* at 240, 287 N.W.2d at 63: "Any fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the accused."

In this case, we have apparently concluded that because an accident occurred, the driver must have failed to exercise due care. That conclusion is not justified in a criminal matter. "'If circumstantial evidence is relied upon in a criminal prosecution, proof of a few facts or of a multitude of facts all consistent with the supposition of guilt is not sufficient to warrant a verdict of guilty. In order to convict, it is necessary not only that the circumstances all concur to show beyond a reasonable doubt that the defendant committed the crime and be consistent with the hypothesis of guilt, since that is to be compared with all the facts proved, but that they be inconsistent with any other rational conclusion and exclude every other reasonable theory or hypothesis except that of guilt. The facts proved must be consistent with each other and with the main fact sought to be established.'" See *Jeppesen v. State,* 154 Neb. 765, 776, 49 N.W.2d 611, 617 (1951). On the basis of the record before us, I would have reversed and dismissed.

McCOWN, J., dissenting.

The majority opinion holds that in the event the driver of a motor vehicle is negligent in any respect and collides with a pedestrian and death results, the driver is guilty of motor vehicle homicide because he has violated a statute requiring him to use due care in the operation of a motor vehicle.

The motor vehicle homicide section, Neb. Rev. Stat. § 28-306(1) (Reissue 1979), under which the defendant

was charged, defines motor vehicle homicide as causing the death of another unintentionally while engaged in the operation of a motor vehicle in violation of the law of the State of Nebraska, or in violation of any city or village ordinance. Any violation is classified a misdemeanor, except that if the proximate cause of the death is the operation of a motor vehicle in violation of the reckless driving, willful reckless driving, or driving under the influence statutes, the motor vehicle homicide is a felony.

The particular statute relied on in this case, and the only statute found to have been violated, is Neb. Rev. Stat. § 39-644 (Reissue 1978), which provides: "Notwithstanding the other provisions of sections 39-601 to 39-6,122, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give an audible signal when necessary and shall exercise proper precaution upon observing any child or obviously confused or incapacitated person upon a roadway." The only part of that statute relevant here is the portion which requires every driver to exercise due care to avoid colliding with a pedestrian. This is simply a codification of the common law requiring the use of due care.

The problem here is that the majority opinion treats a legislative codification of the common law rule of negligence as creating a separate and distinct statutory criminal liability which can arise from any unspecified breach of the general common law duty to use due care in the operation of a motor vehicle. The clear thrust of the majority opinion is that any driver who fails to see a pedestrian on a roadway, even under very poor conditions of visibility, is guilty of motor vehicle homicide if he collides with the pedestrian and the pedestrian dies as a result. See my dissenting opinion in *State v. Otto*, 184 Neb. 597, 169 N.W.2d 612 (1969).

Our motor vehicle homicide statute is simply a specialized version of a manslaughter statute applied to the operation of motor vehicles. Where criminal liability

rests on common law negligence alone, the same principles which apply to manslaughter should also apply to motor vehicle homicide. In manslaughter cases we have consistently held that ordinary negligence is simply not enough to convict someone of manslaughter. "Obviously, it is not any slight breach of duty but rather a gross failure to do what is required of one." *Delay v. Brainard*, 182 Neb. 509, 514, 156 N.W.2d 14, 19 (1968). The Legislature may clearly transform specific acts of negligence into appropriate foundation for criminal liability, but not the broad unlimited concept of negligence in the operation of a motor vehicle. See *State v. Huffman*, 202 Neb. 434, 275 N.W.2d 838 (1979).

The statutory codification of the common law requirement of due care that has been approved in this case requires the use of due care "to avoid colliding with any pedestrian upon any roadway." If that is a valid legislative pronouncement of a statutory crime, then the Legislature may also extend the statute to require a driver to exercise due care "to avoid colliding with any vehicle lawfully on the roadway." In such a case, any driver who failed to see another vehicle before a collision would be guilty of motor vehicle homicide if a death resulted from the accident, regardless of the negligence or comparative negligence of the driver of the other vehicle.

We have consistently held that a crime must be defined with sufficient definiteness and there must be ascertainable standards of guilt to inform those subject thereto as to what conduct will render them liable to punishment. The dividing line between what is lawful and unlawful cannot be left to conjecture. See *State v. Adams*, 180 Neb. 542, 143 N.W.2d 920 (1966).

The conduct of the defendant in the present case did not establish a reckless or careless disregard of or indifference to the rights and lives of other persons. His only violation of law, if there was a violation, was that he failed to see a pedestrian, who was not in a crosswalk but in the middle of a multilane street under

conditions of poor visibility. Obviously, the negligence or comparative negligence of the pedestrian makes no difference whatever.

The majority opinion holds that any breach of the common law duty to use due care in the operation of a motor vehicle is sufficient to convict the operator of motor vehicle homicide if the vehicle collides with a pedestrian and death results. This has not been and should not be the law. As interpreted by the majority, § 39-644 is clearly unconstitutional. In my opinion the conviction should have been reversed.