STATE of Iowa, Appellee,

v.

Bob D. BURKE, Appellant.

No. 84–1053.

Supreme Court of Iowa.

May 22, 1985.

Charles L. Harrington, Appellate Defender, and B. John Burns and Patrick R. Grady, Asst. Appellate Defenders, for appellant.

Thomas J. Miller, Atty. Gen., Marcia Mason, Asst. Atty. Gen., and Thomas J. Ferguson, Asst. Co. Atty., for appellee.

McGIVERIN, Justice.

Defendant Bob D. Burke appeals from his convictions after jury trial of attempted feticide and unlawful termination of a human pregnancy, both in violation of Iowa Code section 707.7 (1983). We affirm.

On this appeal, defendant does not challenge his conviction for attempted feticide. However, with respect to his conviction for unlawful termination of a human pregnancy, he contends (1) that as a matter of law the pregnancy in question was not termi-

nated within the meaning of section 707.7 because the child was born alive, and (2) that there was insufficient evidence to support a conclusion beyond a reasonable doubt that defendant's acts caused the pregnancy to terminate. We find no merit in these contentions.

On October 4, 1983, defendant was charged by trial information in count I with committing the offense of unlawful termination of a pregnancy on or about August 7, 1983 and in count II with committing the offense of attempted feticide in July or August of 1983. The pregnancy in question was that of his stepdaughter, Tonia Burke, who was thirteen years old at the time of the acts alleged in the trial information.

Tonia testified for the State that in early July of 1983 she was tested at a clinic and found to be pregnant. She further testified that defendant learned about her pregnancy by calling the clinic. He sent her back to the clinic on July 13 with a note, which she did not read. Dr. Kent Croskey, a physician at the clinic who read the note, testified that the note requested him to determine how far Tonia's pregnancy was advanced and to write a letter or form stating his conclusion for the use of a doctor in Iowa City.

Dr. Croskey complied with the request. On July 18, defendant took Tonia to the Early Termination of Pregnancy clinic in Iowa City to have an abortion performed. Tonia in her testimony denied wanting an abortion, but defendant, testifying in his own behalf, asserted that she did want one.

After examining Tonia, the doctors at Iowa City declined to perform an abortion on the ground that the pregnancy was too far advanced. Tonia and defendant returned to their home in Waterloo.

Tonia testified that a week or two after their trip to Iowa City, defendant blindfolded her and took her to a Cedar Falls address. She was led into a room and made by defendant to undress and lie on her back on a table. An object [1] that she described as about 21 inches long and "as big around as a skinny straw" was inserted several times in her vagina. Tonia testified that during this time she heard defendant talking to an unidentified woman. Tonia said that she and defendant went home with the object still in her vagina and that she left the object in overnight at defendant's direction.

Although the July incident caused pain and bleeding, Tonia did not miscarry as a result of it. She testified that on August 7 defendant repeated the operation, this time inserting a coat hanger into the object that had been used in July. The August 7 incident caused Tonia more severe pain than she had experienced from the July insertions, and she was taken to a hospital later that day. The next day her baby was born prematurely and alive.

The State also offered testimony from defendant's acquaintances, who testified that he told them about his attempts to abort Tonia's pregnancy and that he had said the first attempt, made with the help of a friend in Cedar Falls, had been unsuccessful but that the second attempt had succeeded.

Dr. Paul Schoon, who treated Tonia on August 7 and delivered her baby, testified in response to a hypothetical question that in his opinion the events alleged by Tonia to have occurred on August 7 would probably cause termination of a pregnancy.

The jury found defendant guilty in count II of attempted feticide with respect to the first attempt in Cedar Falls to abort Tonia's pregnancy.[2] The jury also found defendant guilty in count I of unlawful termination of a human pregnancy with respect

1. The State offered evidence to the effect that this object was a catheter.

2. The second paragraph of Iowa Code section 707.7 (1983) on which count II was based reads in relevant part, "Any person who attempts to intentionally terminate a human pregnancy after the end of the second trimester of the pregnancy where death of the fetus does not result commits attempted feticide."

to the second attempt events of August 7.[3] This appeal by defendant followed concerning the count I charge.

I. *Was Tonia Burke's pregnancy terminated within the meaning of Iowa Code section 707.7?* Defendant contends that, because Tonia's baby was born alive, her pregnancy was not terminated within the meaning of the portion of Iowa Code section 707.7 involved here and that as a matter of law he cannot be found guilty of unlawful termination of a human pregnancy under that statute. Defendant's motions for judgment of acquittal, Iowa R.Crim.P. 18(8), raised this point. In support of this contention, defendant argues that because the phrase "termination of pregnancy" is not defined by the Code, its definition must be sought in the common law. Defendant further asserts that because the death of the fetus was an element of the common law crime of procuring a miscarriage or abortion,[4] it must also be considered an element of the crime of unlawful termination of a pregnancy.

We find this argument unpersuasive. When an offense is declared by statute in the general terms of the common law, without further definition, we will resort to the common law to define the acts constituting the offense. *See, e.g., State v. Delay*, 320 N.W.2d 831, 834 (Iowa 1982) (prior to 1978 revision of criminal code, crime of assault was defined by the common law). However, all crime in Iowa is statutory, and when a statute clearly defines a crime, we will not resort to the common law to add or detract from the language of the statute. *State v. DiPaglia*, 247 Iowa 79, 84, 71 N.W.2d 601, 604 (1955), *cert. denied*, 352 U.S. 1017, 77 S.Ct. 564, 1 L.Ed.2d 549 (1957); *State v. Clough*, 181 Iowa 783, 785, 165 N.W. 59, 60 (1917); 21 Am.Jur.2d *Criminal Law* § 7 (1981); 22 C.J.S. *Criminal Law* § 21 (1961). *Accord*

*State v. Forsman*, 260 N.W.2d 160, 164 (Minn.1977); *State v. Gallegos*, 193 Neb. 651, 653, 228 N.W.2d 615, 617 (1975).

As relevant to this case, section 707.7 states that any person who is not licensed to practice medicine or surgery under Iowa Code chapter 148 or chapter 150A and who terminates a human pregnancy is guilty of a crime. The language is clear and simple, and contains no term requiring definition by the common law. *Cf. State v. Mattan*, 207 Neb. 679, 684, 300 N.W.2d 810, 813 (1981) ("due care" in criminal statute defined according to common law); *State v. Woodworth*, 234 N.W.2d 243, 247 (N.D. 1975) ("disturbing the peace"); *People v. Askar*, 8 Mich.App. 95, 99, 153 N.W.2d 888, 891 (Mich.Ct.App.1967) ("sodomy").

There is no requirement in the portion of section 707.7 involved here that the fetus be born dead before a crime can occur.

We conclude that there is no room in section 707.7 for the process of interpretation that defendant urges us to pursue. It is not claimed that the language of the statute is in any respect ambiguous, or that its words are not readily understood. To subject this clearly worded statute to interpretation would usurp the prerogatives of the legislature. To hold that, because the death of the fetus was required to constitute the common law crime of abortion, it should also be required for conviction of unlawful termination of a human pregnancy would be to substitute the common law crime of abortion for the statutory crime of unlawful termination of a human pregnancy under section 707.7. This would effectively deprive the legislature of its power to create and declare crimes.

Defendant's contention that Tonia Burke's pregnancy was not terminated within the meaning of section 707.7 is without merit. Our holding is restricted to the factual context of this case. We do not

**3.** The fourth paragraph of Iowa Code section 707.7 (1983) on which count I was based reads in relevant part, "Any person who terminates a human pregnancy who is not a person licensed to practice medicine and surgery under the provisions of chapter 148, or an osteopathic physician and surgeon licensed to practice osteopathic medicine and surgery under the provisions of chapter 150A, commits a class 'C' felony."

**4.** We assume *arguendo* the truth of this proposition, although no Iowa authority to this effect has been cited.

now pass on other questions or situations that were not presented to the trial court nor us on appeal under the portion of section 707.7 involved here.

II. *Was the evidence sufficient to sustain the conviction?* The next question is whether the evidence was sufficient to support a finding by the jury beyond a reasonable doubt that the acts of the defendant on August 7 caused the termination of Tonia Burke's pregnancy. At trial, defendant made timely motions for judgment of acquittal also raising this issue. In answering this question, we consider all the evidence in the light most favorable to the State under the principles stated in *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984); *State v. Blair,* 347 N.W.2d 416, 418–19 (Iowa 1984); and *State v. Robinson,* 288 N.W.2d 337, 339–40 (Iowa 1980). Defendant's argument on this issue is based on the asserted failure of the State's medical experts to give a legally sufficient medical opinion as to what caused the termination of Tonia Burke's pregnancy.

Defendant acknowledges that Dr. Schoon, in response to a hypothetical question posed by the State, testified that the acts of defendant on August 7, as described by Tonia Burke in her testimony, "probably" would cause termination of a pregnancy. However, defendant calls our attention to other answers by Dr. Schoon and other medical witnesses, given in response to hypothetical questions posed by the defense, which indicated that causation of the termination of the pregnancy by the events of August 7 was merely possible, not probable. Defendant argues that because testimony indicating probability of causation is required to establish a jury question on the issue, the State's evidence on this point was insufficient.

This contention is without merit. The State's medical experts were asked hypothetical questions, requiring the assumption of certain facts, by the State and by the defense. The hypothetical questions propounded by the State differed sharply from those posed by the defense, inasmuch as each side had its own version of the facts to be assumed in each question. The answers indicating possibility (as opposed to probability) of causation were given in response to hypothetical questions asked by the defense, in which the facts were assumed as defendant wished to present them. The jury, however, was not required to believe that the facts assumed by the defense in those questions were true. The jury could have found, based on the testimony of the State's witnesses, that the State's hypothetical questions accurately presented the facts of the events of August 7. Dr. Schoon's testimony on direct examination by the State was sufficient to create a jury question as to causation.

■ We also disagree with defendant's statement of the legal standard relating to the evidence required to create a jury question on causation. It is true that expert testimony which speaks only of a possibility of causation is, without more, insufficient to create a jury question. However, when expert testimony indicating a possibility of causation of a particular condition by a particular circumstance is coupled with nonexpert testimony to the effect that the condition did not exist before the occurrence of the circumstance that allegedly caused it, then a jury question as to causation is generated. *See Winter v. Honeggers' & Co.,* 215 N.W.2d 316, 323 (Iowa 1974).

■ In this case, nonexpert testimony indicated that the "condition" in question (the termination of Tonia Burke's pregnancy) did not exist before the acts of defendant on August 7. Therefore, even the expert testimony relied upon by defendant (indicating only a possibility of causation) was sufficient to establish a jury question. Defendant cannot prevail on the basis of his claim of insufficiency of the evidence to support this conviction.

We have examined all the contentions made by defendant and find them to be without merit. The case is affirmed.

AFFIRMED.

All Justices concur except CARTER and WOLLE, JJ., who dissent.

CARTER, Justice (dissenting).

I dissent. While defendant is unquestionably guilty of one count of attempted

feticide under the second paragraph of Iowa Code section 707.7 and perhaps two counts of that offense, I cannot agree that the fourth paragraph of that section creates yet an additional criminal offense for an attempted third trimester abortion where the pregnancy terminates with a live birth. In support of this conclusion, I would urge that under the definition of "termination of a human pregnancy" which the majority has fashioned, it is a practical impossibility to commit that act without simultaneously *attempting* to terminate the human pregnancy. As a result, I believe that with respect to third trimester pregnancies, where the pregnancy is in fact terminated by such an attempt, the perpetrator, depending on whether the fetus survives, is guilty of violating either paragraph one of the statute (feticide) or paragraph two (attempted feticide) but not paragraph four.

This interpretation of the statute appears to me to be consistent with its basic aims and, in addition, has the salutary result of avoiding the application of the fourth paragraph to volunteer midwives such as well-intentioned policemen or taxicab drivers who would be made criminals under the majority's interpretation of the statute.

WOLLE, J., joins this dissent.