STATE OF NEBRASKA, APPELLEE, v. BURL HOLLOMAN, APPELLANT.

248 N. W. 2d 15

Filed December 8, 1976. No. 40462.

Frank B. Morrison and Bennett G. Hornstein, for appellant.

Paul L. Douglas, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

This is an appeal from defendant's conviction for forcible rape and robbery. Having been found guilty by a jury, the defendant was sentenced by the District Court to a term of 8 to 15 years imprisonment in the Nebraska Penal and Correctional Complex on the rape charge, and to a term of 10 years imprisonment on the robbery charge, said sentences to be served consecutively. We affirm the judgment and sentences of the District Court.

It is not necessary for us to detail the facts of this offense. Suffice it to say, that on April 20, 1975, Gladys M. Mann, a 76-year-old retired registered nurse living in Omaha, Nebraska, was forcibly raped in her home in the early morning hours and afterwards robbed of $20 by her assailant.

The defendant raises four contentions on appeal. We shall discuss each of these separately.

The defendant first alleges that the District Court committed reversible error in overruling his pretrial motion to suppress, from use against him at trial, evidence of the impression of the bottom of the heel of one of his shoes and a blue sweater, which he claims were seized in violation of his constitutional rights. The facts giving rise to the seizure of these two items of evidence are as follows.

After her assault, Mrs. Mann called several neighbors and the Omaha police. Patrolman Ray E. Hunt was assigned to go to Mrs. Mann's residence to continue the rape and robbery investigation. Upon his arrival he first talked with the officers who had initiated the investigation and then with Mrs. Mann. He inspected the rear door of Mrs. Mann's residence and found that it had been forcibly entered. On the damp, fresh ground outside the door were several footprints and heel prints.

After obtaining a general description of her assailant from Mrs. Mann, Officer Hunt conducted a house-to-house check to see if any of the neighbors might have seen or heard anything. As a result of these inquiries, he was directed to a vehicle possibly belonging to the suspect.

He took the license number down and ran a computer check on it which revealed that the vehicle was registered to the defendant, who lived next door. He and another officer then knocked unsuccessfully at the defendant's door.

Officer Hunt then returned to the police station, and ran a computer check to ascertain if the defendant had a prior criminal record. The defendant did. Officer Hunt then took the defendant's photo from his police file and combined it with three others. He and Officer Keavy returned to Mrs. Mann's residence and showed her these photos. Mrs. Mann positively identified the defendant from these photos as her assailant. Officers Hunt and Keavy then approached the defendant's residence, which was next door. The officers knocked on the defendant's door. After several minutes, he appeared and voluntarily let them in. The defendant identified himself, as did the police officers. The defendant was then advised by the officers that he was a possible suspect in a rape case and asked him to come to the police station with them for questioning. The defendant agreed to accompany the officers but had to dress first. While the defendant was getting dressed, Officer Hunt observed several pair of shoes lying on the floor next to where the defendant was. He picked these up and observed the heels, comparing them with the prints he had observed earlier outside Mrs. Mann's home. He noticed that the heels on one of the pair of shoes had a similar design. These shoes were seized as evidence. Officer Keavy then observed a light blue sweater in a chair next to the defendant's bed which matched the description of the one worn by Mrs.

Mann's attacker. The sweater was also seized. After he was dressed, the defendant was taken to the police station and subsequently arrested. In Harris v. United States, 390 U. S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067 (1968), the Supreme Court stated: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

In Coolidge v. New Hampshire, 403 U. S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), the court elaborated upon the plain view doctrine: "[T]he 'plain view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object. * * *

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine seems to supplement the prior justification - whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused - and permits the warrantless seizure."

Nebraska has followed the plain view doctrine. State v. Shepardson, 194 Neb. 673, 235 N. W. 2d 218 (1975); State v. Romonto, 190 Neb. 825, 212 N. W. 2d 641 (1973); State v. Smith, 184 Neb. 363, 167 N. W. 2d 568 (1969).

It is clear under the facts of this case that the police officers had a "right to be in the position to have [the] view." Harris v. United States, *supra.* The defendant was a suspect in a rape and robbery case. He had been positively identified by the victim as her assailant. He lived next door to the rape victim. After the officers knocked on the defendant's door, and identified themselves as police officers, they were let in by

the defendant. The defendant agreed to accompany them to the police station for questioning after he first dressed. The record is devoid of any objection by the defendant to the presence of the officers in his apartment while he dressed.

The officers entered the defendant's residence solely for the purpose of having the defendant accompany them to the police station. They were not searching for evidence against the accused. Thus, their viewing of any evidence in plain view was clearly inadvertent. Coolidge v. New Hampshire, *supra*.

There is no question that the seizure of the defendant's light blue sweater was proper. It was clearly "in plain view" on a chair by the defendant's bed and fit the description given by Mrs. Mann of the one worn by her assailant. The real question in this case is whether or not Officer Hunt's actions in picking up several pair of the defendant's shoes and examining the heels went beyond the "plain view" doctrine and constituted an unconstitutional search and seizure. We hold that it did not.

Officer Hunt was aware, from his work on the case, that several distinctive heel prints were left in the damp ground outside the victim's rear door. In the defendant's apartment, he observed several pair of shoes. He picked them up and examined their heels comparing the heel design with the prints he saw earlier that morning. That led to the seizure of one of the pair of shoes as evidence. While the shoes themselves were clearly in plain view, the heel prints could not have been observed without Officer Hunt taking the action that he did.

In United States v. Catanzaro, 282 F. Supp. 68 (S. D. N. Y., 1968), a postal inspector, lawfully in the defendant's apartment, noticed a rifle on a wall rack. Recalling from his investigation of the defendant's alleged fraudulent use of credit cards, the repair of such a rifle with a credit card, he examined the rifle more carefully

and observed that the serial number on the rifle matched that of the one repaired through the use of a credit card. The rifle was seized as evidence. The court, denying a motion to suppress the rifle as evidence, said: "The inspector and his companions were lawfully present in the defendant's apartment * * *. Discovery of the rifle required no search * * *. The inspector was not precluded from observing what was clearly and plainly to be seen. Having seen the rifle, the inspector properly scrutinized it more carefully, thereby confirmed his suspicions that it was part of the fruit of the alleged crime. That he was required to examine it more closely to identify the serial number did not transform a mere observation into an unconstitutional search." See, also, Scott v. State, 331 So. 2d 759 (Ala. Crim. App., 1976); State v. Proctor, 12 Wash. App. 274, 529 P. 2d 472 (1974); State v. Campbell, 15 Wash. App. 98, 547 P. 2d 295 (1976).

The defendant's shoes were in plain view. Officer Hunt's actions under the circumstances clearly were not unreasonable. We hold that Officer Hunt had the right to scrutinize these shoes more carefully, and to examine them, including lifting them up and turning them over. The District Court was correct in denying the defendant's motion to suppress.

The defendant's next assignment of error concerns the following exchange at trial:

"Q. (Prosecutor Pane) What did you show her?

"A. I showed her four mug shots from the Omaha Police Division.

"Mr. Carey (Defense counsel): I will move to strike that, Your Honor.

"The Court: Four photos, you mean?

"Mr. Hunt (Witness): Yes sir.

"The Court: It will be overruled.

"Q. Four photos?

"A. Yes, sir.

"Q. And, after you showed her these four photos what happened then?

"Mr. Carey: I am going to object to that as being incompetent; irrelevant, immaterial, self-serving and hearsay.

"The Court: It will be overruled.

"A. After I showed her these four photos, she picked out this photo and stated that this was positively the party who raped and robbed her on this day.

"Q. And, who was that party?

"A. Burl Holloman."

The defendant contends that the District Court committed reversible error in overruling the defendant's motion to strike Officer Hunt's reference to the police photographs of the defendant as "mug shots."

In support of this contention, the defendant draws attention to our recent decision in State v. Atwater, 193 Neb. 563, 228 N. W. 2d 274 (1975). In that case, we reversed a conviction for robbery due to the "inexcusable conduct of the prosecution in presenting before the jury possible inferences of previous crimes on the part of the defendant." During direct examination relative to photographs of the defendant shown to witnesses, these were referred to as "mug shots." In addition, testimony was given that these photos were "selected from the Robbery Detail Office. They have files and books concerning parties that are possible suspects in that type of crime or parties they have known to have committed that type of crime before." We held: "It is evident that the description of the photos as 'mug shots,' and that they concerned parties 'known to have committed that type of crime before' was sufficient to convey the impression to the jury that the defendant was a known criminal who had previously been arrested for a crime exactly like the one on trial. The officer had testified on two previous occasions in this same case, out of the presence of the jury, about these photo-

graphs. In neither of the previous instances did the officer refer to them as 'mug shots,' * * *.

"Defendants must be given fair trials, and it is the responsibility of the prosecution to see that each defendant receives one. Harmless error is intended to cover those inadvertent slips, which occasionally creep into a hotly contested trial, which do not severely prejudice the rights of the defendant. Harmless error should never be applied in those instances where the prosecution deliberately, or because of very careless procedures, injects prejudical error into the proceedings."

Unlike State v. Atwater, *supra,* there is nothing which would indicate that the reference here to the photos as "mug shots" was made deliberately by the prosecution or was the result of very careless procedures. The reference appears to be nothing more than an inadvertent slip by the testifying police officer, which was immediately corrected by him after the interjection of the court. This isolated reference to "mug shots" was unaccompanied, unlike Atwater, by any prejudicial explanation of their origin. In light of the total evidence in this case, any prejudice resulting to the defendant from this single reference to the photos as "mug shots" was harmless error.

In his brief, the defendant argues that admission of these photographs into evidence as exhibit 17 was also error. A review of the record fails to show any objection to these photos by defense counsel, either when they were identified, introduced, or received by the trial court. It is a well-settled rule that a defendant may not predicate error on the admission of evidence to which no objection was made at the time it was offered or adduced. State v. Temple, 192 Neb. 442, 222 N. W. 2d 356 (1974). Thus, the admission into evidence of these photographs is not subject to review by this court.

The defendant next alleges that the District Court committed reversible error in failing to grant his mo-

tion for a directed verdict of acquittal based upon the State's failure to prove essential elements of the offense of forcible rape. The defendant argues that the State failed to establish beyond a reasonable doubt that carnal knowledge of the victim was had by the defendant, including a penetration of the vagina by the male sexual organ. In support of his position, the defendant cites testimony by Mrs. Mann's personal physician, Dr. Allan Hruby, who examined her the day after the rape occurred. Dr. Hruby testified that Mrs. Mann's vagina was completely closed as a result of past cancer surgery and a condition of corrosis. Dr. Hruby, however, testified that in his opinion Mrs. Mann had been raped. Mrs. Mann also testified several times that there was penetration.

In State v. Atkinson, 190 Neb. 473, 209 N. W. 2d 154 (1973), we held: "The slightest penetration of the sexual organs of the female is sufficient, if established beyond a reasonable doubt, to constitute the necessary element of penetration in a prosecution for rape, and such element may be proved by either direct or circumstantial evidence.

"It is only where there is a total failure of proof to establish a material allegation of the information, or the testimony is of so weak or doubtful a character that a conviction based thereon cannot be sustained, that the trial court is justified in directing a verdict for the defendant." There was sufficient evidence for the jury to conclude that penetration had occurred. There is no merit to this contention.

Likewise without merit is the defendant's contention that the State failed to establish that Mrs. Mann was neither the defendant's daughter or sister. Former § 28-408, R. S. Supp., 1974. Mrs. Mann testified that she neither knew the defendant or knew that he lived next door. The defendant was 29 years old; Mrs. Mann was 76. The jury could obviously observe that Mrs. Mann and the defendant were of different races. "If it satis-

factorily appears from the evidence that the prosecutrix is not the wife, sister or daughter of the accused, a conviction will not be reversed because no witness testified in direct language to these facts." Hanks v. State, 88 Neb. 464, 129 N. W. 1011 (1911). See, also, Jump v. State, 146 Neb. 501, 20 N. W. 2d 375 (1945). There was sufficient evidence that Mrs. Mann was neither the sister or daughter of the defendant.

The defendant's last contention is that his sentence is excessive. The District Court sentenced the defendant to a term of 8 to 15 years imprisonment for the forcible rape, and to a consecutive term of 10 years imprisonment for the robbery. A sentence imposed within statutory limits will not be disturbed on appeal unless there appears to be an abuse of discretion. State v. Gillham, 196 Neb. 563, 244 N. W. 2d 177 (1976). Nor will the action of the District Court in directing that sentences be served consecutively be disturbed on appeal unless the record shows an abuse of discretion. State v. Tweedy, 196 Neb. 251, 242 N. W. 2d 629 (1976). The presentence report shows that the defendant has a lengthy arrest record going back many years. This record shows a continuing pattern of aggressive criminal behavior, ranging from disorderly conduct, to assault to rape, and abusing an officer. In 1969, he was sentenced to 2½ years in the Kansas State Penitentiary for armed robbery. This crime was a violent sexual assault upon a 76-year-old woman. There was no abuse of discretion in either of the sentences nor in the fact that they are to be served consecutively.

The judgment and sentences of the District Court are correct and are affirmed.

AFFIRMED.