STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLANT, V.
LARRY J. MARTINEZ, APPELLANT AND CROSS-APPELLEE.

252 N. W. 2d 630

Filed April 20, 1977. No. 40897.

David M. Geier, of Bauer, Galter & Geier, for appellant.

Paul L. Douglas, Attorney General, and Robert F. Bartle, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.

After trial to a jury the defendant was found guilty on three counts, two counts of assault with intent to commit great bodily injury and one count of rob-

bery. The trial court granted a new trial on the rob-
bery count and overruled the motion for new trial on
the conviction of the other two counts. The defend-
ant was sentenced to terms of 2 to 5 years to be
served consecutively. The defendant appeals and
the State cross-appeals.

Defendant assigns three errors: (1) That the trial
court erred in failing to sustain the defendant's mo-
tions attacking the method of selection and composi-
tion of the jury; (2) the trial court erred in failing
to grant the defendant's motion for new trial on the
two counts of assault with intent to inflict great
bodily harm; and (3) that the sentences are exces-
sive. The State cross-appeals asserting here that
the trial court erred in granting the motion for new
trial on the robbery count.

We shall take the defendant's errors in order. In
his motion for an order dismissing the case or, in the
alternative, dismissing the prospective panel of jur-
ors, the defendant alleged that no persons of Ameri-
can Indian descent were included in the panel, that
the panel did not evidence a reasonable cross-sec-
tion of the community, that the panel was not sel-
ected in a manner reasonably calculated to encom-
pass a reasonable cross-section of the community,
and that the panel was in violation of the defendant's
rights guaranteed him under the Sixth Amendment
of the Constitution of the United States. The defend-
ant, in support of his contention, introduced evidence
that the 1970 census showed approximately 750 In-
dians living in Lancaster County. That total could
be possibly as large as 1,000 Indians at any one time.
The 1970 census shows Lancaster County to have a
total population of 167,972. The Indian population of
Lancaster County then was approximately one-third
of one percent of the total population of the county.
To support his contention that no American Indian
had been summoned for jury duty in the last 18
years, the defendant relied on the testimony of the

jury commissioner who stated that he personally could not recall any Indian serving on a jury during his tenure but "there would be a lot of people that might be Indians that I wouldn't recognize as Indian, * * *." The jury commissioner also testified that surnames are an unreliable indicator of Indian heritage and that he was familiar with Indian families with names like Sheridan and Phillips while he also knew non-Indian people of the same name. An indication of the difficulty of ascertaining the heritage by surnames is the disclosure by the voir dire that a Mrs. Smith, a prospective juror, disclosed that she had Indian blood.

A prima facie case of discrimination in jury selection can be established upon demonstration that a significant disparity exists between the percentage of a particular minority chosen for jury duty and the percentage of that minority available in the population from which the jurors are drawn. See Gibson v. Blair, 467 F. 2d 842 (5th Cir., 1972). For example, in Norris v. Alabama, 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074 (1935), proof that a substantial segment of the population was of negroid descent, coupled with proof that no black American, although several were qualified, was ever called for jury service over an extended period of time, was held to constitute a prima facie case of systematic exclusion of a distinct minority from jury service.

The cases cited by the defendant in support of his contention that he has shown a prima facie case of systematic exclusion of American Indians from jury service in Lancaster County, Nebraska, are not at all similar to the facts in the current case. In Patton v. Mississippi, 332 U. S. 463, 68 S. Ct. 184, 92 L. Ed. 76 (1947), evidence was introduced that for 30 years no Negro had sat on a jury in the county even though the county's population was about one-third Negro. In Alexander v. Louisiana, 405 U. S. 625, 92 S. Ct. 1221, 31 L. Ed. 2d 536 (1972), 6.75 percent of

the persons on the jury lists were Negro even though 21.06 percent of the total population from which the jurors were drawn was Negro. The failure of the State of Nebraska to be able to demonstrate that a population group consisting of less than one-third of one percent of the total population to have been called for jury duty even over an extended period of time is not sufficient evidence to raise a prima facie case of discrimination.

This court has previously approved of the statutory method of jury selection from voter registration lists. See State v. Gutierrez, 187 Neb. 383, 191 N. W. 2d 164 (1971). As shown by that opinion, Nebraska's jury selection process is racially neutral. Because members of minorities are not identified, Nebraska's jury selection process does not encounter the problems as did the jury selection processes in Avery v. Georgia, 345 U. S. 559, 73 S. Ct. 891, 97 L. Ed. 1244 (1953), where Negroes were identified by colored cards; or in Whitus v. Georgia, 385 U. S. 545, 87 S. Ct. 643, 17 L. Ed. 2d 599 (1967), where the letter ''(c)'' was placed after the names of Negroes. While some Indians may be easily identifiable by their surnames, many have names which are not obviously Indian. That fact fails to separate Indians from other ethnic groups. The defendant has failed to show evidence creating a presumption of discrimination. We find the assignment of error to be without merit.

The evidence shows that on November 29, 1974, the defendant and two other persons, Garrett Wounded Head and Laurence V. Redshirt, spent the evening in taverns in Lincoln, Nebraska. The defendant and the two other individuals were American Indians and were residing at the barracks at the Lincoln Air Park because of their connection to the defense of the Wounded Knee cases. At about 1:30 a.m. on November 30, 1974, the parties left a tavern to attend a party given by other Indians in the vicinity of the

residence of the complaining witness, Michael J. Williamson, at 614 New Hampshire Street, Lincoln, Nebraska. When the defendant and his two companions arrived, the Indian party had not yet started. Their attention was directed to a party being held by Williamson at the above address. Among those at the party was a recent acquaintance of Williamson, Leland E. Carmichael, also a complaining witness. The defendant and his two companions peacefully gained entrance to the Williamson apartment and, after remaining ½ hour to 45 minutes, they left the premises. They went to the party to which they had originally intended to go, remained there until approximately 3:30 a.m., returned to their car, and met a fourth person, Johnny Moore. The four then returned to Williamson's apartment. The evidence is conclusive that the four walked down the outside stairs to a basement apartment, forcibly broke into the apartment, tearing the lock from the door frame, and demanded liquor from Williamson who replied that he had none and that the party was over and asked them to leave. At this time Carmichael was in a spare bedroom in the Williamson apartment. The evidence is undisputed that the complainants were then brutally beaten by fists, pop containers, boots, and in the case of Williamson, a chair. Both suffered painful injuries requiring medical attention. During the course of the encounter, Carmichael's money was demanded of him, presumably by Moore. Following threats and after blows to the head by a boot, Carmichael gave his wallet to Moore. At the same time or shortly thereafter, a cord was jerked from the stereo set, the telephone was pulled out, and both complainants' hands were tied. The Indians then left. Williamson testified at trial that after he returned from receiving treatment for his injuries at Lincoln General Hospital, he noticed several items were missing from his apartment including a Westinghouse portable radio, a

cassette tape recorder player, and a carrying case for cassette tapes.

Subsequently, on December 2, 1974, officers of the Lincoln police department, acting pursuant to a search warrant, searched the A.I.M. barracks at the Lincoln Air Park and located exhibits 16, 17, and 18, the portable radio, the cassette player, and the cassette carrying case, in a room occupied by Belva Thunderhawk and Garrett Wounded Head. The defendant Martinez, prior to trial, filed a motion to suppress which was overruled. We agree. Without going into the technical aspects of the sufficiency of the affidavit and the search warrant and the manner of executing the same, it is sufficient to point out that a motion to suppress can only be urged by one whose Fourth Amendment rights were violated and not one aggrieved solely by the introduction of the incriminating evidence. State v. Waechter, 189 Neb. 433, 203 N. W. 2d 104 (1972); State v. Van Ackeren, 194 Neb. 650, 235 N. W. 2d 210 (1975). The defendant did not contend at the trial court level and does not assert in this court that he had any reasonable expectation of privacy in the room of Belva Thunderhawk and Garrett Wounded Head.

At trial the defendant again objected to the introduction of exhibits 16, 17, and 18. The court overruled the objection and allowed those exhibits into evidence. The cause was submitted to a jury which returned a guilty verdict against the defendant on all three counts. The defendant then filed a motion for new trial alleging, among other errors: "Errors of law whereby the state was allowed to place into evidence certain items of personal property seized as a result of the execution of a search warrant, which items did not constitute evidence of the offences (sic) charged, and the introduction of which was prejudicial to the defendant to an extent which outweighed any possible probative value." Defendant points out to this court that the robbery offense of

which he was charged was that of taking property of value from the person of Leland E. Carmichael, to wit, money, and that the defendant was not charged with the offense of taking by force and violence the property of Michael J. Williamson. He then argues that the introduction of exhibits 16, 17, and 18 was prejudicial because those exhibits were not evidence of the crime of which he was charged but of possibly another or separate crime. The trial court overruled the motion for new trial in the assault counts and granted the motion for new trial as to the robbery count, suggesting that it had improperly admitted the exhibits. We disagree. As part of one incident the four Indian males, including the defendant, forcibly entered Williamson's apartment and thereafter assaulted and robbed Williamson and Carmichael. Both Williamson and Carmichael identified Wounded Head and Martinez as participants in the assaults and robberies as did Redshirt, a participant in the assault and robbery. The exhibits tended to lend credence to the testimony of Williamson, Carmichael, and Redshirt which verified the participation of Wounded Head. The evidence thereby affords credibility to their identification of the defendant Martinez as a participant. Evidence introduced relating to the robbery of Williamson would certainly be relevant to prove the requisite knowledge, motive, and intent of Martinez in the entering of the Williamson property, the assault on Williamson and Carmichael, and the robbery of Carmichael. As this Court has stated previously: "It is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constituent elements of the crime with which the accused is charged even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes." State v. Knecht, 181 Neb. 149, 147 N. W. 2d 167 (1966). See, also, State v. Riley, 182 Neb. 300, 154

N. W. 2d 741 (1967). The evidence was properly admitted. The court was correct in denying the motions for new trial on the assault counts and was incorrect in granting the motion for new trial on the robbery count.

The State cross-appeals from the order granting a new trial on the robbery count and asks that we reinstate the verdict and remand to the District Court for sentencing. We decline. The rule in this State is that in a criminal case the State cannot cross-appeal from an order granting the defendant a new trial. State v. Taylor, 179 Neb. 42, 136 N. W. 2d 179 (1965). The State's right to appeal in criminal cases is limited by section 29-2315.01, R. R. S. 1943, which provides that the State may appeal only after a final order has been filed in the case.

The third assignment of error relates to the alleged excessiveness of the sentence. The defendant was sentenced to consecutive terms of 2 to 5 years on each of the assault counts. The assaults and robbery were particularly brutal. We have examined the presentence report. The defendant has an extended criminal record dating back to 1964. His juvenile record includes convictions for petit larceny and reckless driving. He was placed on probation for robbery. He has been arrested for the offenses of assault and battery on a police officer, rape, and resisting arrest. The sentence is well within the limits of the statute. The statute defining assault with intent to inflict great bodily injury provides for imprisonment for not less than 1 year nor more than 20 years. § 28-413, R. R. S. 1943.

We have often said that a sentence, in the absence of an abuse of discretion, will not be disturbed on appeal if it is within the range of the statutory penalties. State v. Tweedy, 196 Neb. 251, 242 N. W. 2d 629 (1976).

The judgment and sentences of the District Court are affirmed.

AFFIRMED.