STATE OF NEBRASKA, APPELLEE, V. GREGORY D. HASELHORST, APPELLANT.

353 N.W.2d 7

Filed August 3, 1984.   No. 83-779.

James Hatheway, for appellant.

Paul L. Douglas, Attorney General, and Linda L. Willard, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.

GRANT, J.

Defendant, Gregory D. Haselhorst, was issued a citation for "Possession Less 1 oz Marijuana," in violation of Neb. Rev. Stat. § 28-416(6)(a) (Cum. Supp. 1982). Defendant filed a motion to suppress all evidence seized in a warrantless search of his car. The county court for Cedar County (hereinafter referred to as the trial court) denied the motion to suppress. Counsel then stipulated that the case be submitted for trial on

the evidence presented at the suppression hearing. The trial court then found defendant guilty and imposed a $100 fine. Defendant appealed to the district court, where, after a series of procedural misadventures (such as not offering the bill of exceptions in evidence—an omission corrected by the district court's granting of defendant's first motion for new trial), and after hearings on February 17, May 12, and September 8, 1983, the trial court's judgment and sentence were affirmed. Defendant then appealed to this court, assigning two errors: (1) "[I]n allowing plaintiff's witness to volunteer his answer to defendant's question over defendant's objection"; and (2) In "overruling the defendant's motion to suppress all evidence against defendant in a trial as a result of a search and seizure of defendant's automobile." We affirm.

The evidence before the trial court showed that defendant, a resident of Lancaster County, Nebraska, had returned to his hometown of Randolph, Nebraska, for his mother-in-law's birthday party on November 6, 1982. After the party defendant went to a dance in Randolph. After the dance defendant took a friend to the friend's home in the country to examine some remodeling work. Defendant and the friend then returned about 3 a.m. to Randolph in defendant's car with defendant driving. In Randolph defendant testified he "drove through the main street of Randolph probably a couple of times and also took maybe a couple of other side streets down a residential area. Probably was in town for 15 minutes." Defendant then parked next to his friend's pickup truck to let the friend out. At this point defendant was parked on the wrong side of the street next to the friend's truck.

In the meantime, defendant's conduct in driving slowly around Randolph, with out-of-county license plates, had been reported to the chief of police by a Randolph reserve officer. The chief of police, Gerald Greeley, drove to the area and observed defendant's car going 3 to 6 miles per hour while being driven by the downtown buildings. Greeley then observed defendant's car improperly parked next to a pickup truck. Greeley pulled up to defendant's car. As Greeley approached the car on foot, the passenger got out of defendant's car, looked back into the car, and said to the driver, "It's the cop." Greeley

told the passenger to get back into defendant's car, and the passenger did so.

During this time, Greeley saw defendant "shuffling something around on the floor." Greeley approached the driver's side of the car and asked the defendant for his driver's license. Greeley shined his flashlight into the car, and as he took another step forward, he "viewed a a [sic] bong pipe—it appeared to be a bong pipe—waterpipe they use for smoking marijuana, on the floor." Greeley then advised his companion (a policeman friend of Greeley's who was accompanying Greeley on his rounds as a volunteer) that he had seen drugs. Greeley then told defendant and the passenger to get out of the car and to go to the front of the car. They got out and went to the front of the car, where Greeley's friend kept them under observation.

Greeley then removed the water pipe from the car. He testified he "could smell an odor of it appeared to be marijuana from this pipe." Greeley then searched the car and found four packets of leafy material, which he later testified without objection contained marijuana, and another marijuana pipe. Greeley then placed defendant under arrest and issued a warning ticket for improper parking, and the citation for possession of marijuana.

On cross-examination Greeley was asked by defendant's counsel, "In fact you did not see any controlled substance in defendant's car from your position outside of defendant's car did you?" Greeley answered, "No sir, just except the glass pipe that had a black bowl the top of it—it was black and looked like residue."

Defendant's counsel objected to his answer and asked that it be stricken. His objection was overruled. It is this ruling that is the subject of defendant's first assignment of error. The assignment is frivolous and need not be discussed further. A dangerous question was asked on cross-examination and an answer that defendant's counsel did not want was elicited.

With regard to his second assigned error, defendant's position seems to be that since the glass water pipe could be used for legal purposes, Chief Greeley did not have probable cause to search the car. In support of this position defendant testified

that after his arrest in this incident, he bought, by mail, an identical water pipe, which he used for medical purposes of his own. Defendant testified he was troubled with hay fever and breathing problems, and he used the second water pipe to smoke "herbal remedies" such as "mullein and demania [sic]" to relieve his problems.

We consider this position no further, except to note, as a matter of fact, that Chief Greeley observed more than a glass water pipe—he viewed a glass water pipe with black residue on it. Greeley had received special training in the field of narcotics; he was familiar with the general type of water pipe he saw on the floor of the car; and he knew from his experience that such pipes were used for smoking marijuana. It is established that under certain circumstances a police officer may seize evidence in plain view without a warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *Texas v. Brown*, 460 U.S. 730, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983).

Three requirements must be satisfied to uphold a warrantless search and seizure from an automobile under the plain view doctrine. First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. Second, the officer must discover the incriminating evidence "inadvertently," i.e., he may not know in advance the location of the evidence and intend to seize it without obtaining a warrant, relying on the plain view exception only as a pretext. Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. *Texas v. Brown, supra.*

The initial intrusion in the present case was based upon the suspicious nature of defendant's vehicle cruising a downtown section of a small town for 15 minutes at 3 a.m., coupled with the parking irregularity. The officer acted reasonably in approaching the driver. The second requirement is also satisfied, as there is no assertion made that Chief Greeley approached the vehicle on the pretext of seizing marijuana. The discovery of the water pipe was clearly inadvertent.

As to the final requirement for a seizure of this type, the

defendant, as alluded to above, argues that the officer must show he possessed knowledge the defendant intended to use the water pipe for illicit drugs as the officer viewed it on the floor from outside the vehicle. The defendant's interpretation of the "immediately apparent" requirement is mistaken.

In *Brown, supra,* the Court said at 741-42 that " '[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity' " (emphasis omitted), quoting from *Payton v. New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). The *Brown* court continued by stating that

> probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," [citation omitted] that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.

*Texas v. Brown, supra* at 742.

Officer Greeley, having viewed the water pipe with black residue on it on the floorboard, acted reasonably in retrieving it for a closer inspection which revealed an odor of marijuana about the pipe. The officer's knowledge that this type of glass water pipe is commonly used for smoking marijuana, combined with the odor of marijuana, is sufficent to establish probable cause in the officer's mind that there was contraband or property useful as evidence of a crime in the car. It was reasonable for the officer to then conclude that marijuana may be located in the interior of the vehicle and that a search of the car was proper.

The order of the district court, affirming the trial court's judgment of conviction and the sentence, was correct and is affirmed.

AFFIRMED.