STATE OF NEBRASKA, APPELLEE, V. WILLIAM SKOLNIK, DOING
BUSINESS AS MUSE THEATRE, APPELLANT.
358 N.W.2d 497

Filed November 9, 1984.   No. 84-150.

James E. Schaefer, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, and Gary P. Bucchino, Omaha City Prosecutor, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

The defendant, William Skolnik, was convicted on two counts of distribution of obscene material in violation of Neb. Rev. Stat. § 28-813 (Reissue 1979). On May 5, 1983, an Omaha Municipal Court judge placed him on probation for 1 year and ordered him to pay a fine of $500 in the event he violated his probation. The district court for Douglas County affirmed the conviction and sentence. Defendant appeals to this court, assigning as error the overruling of defendant's motion to suppress, as evidence, the films allegedly constituting the obscene material in question, the overruling of defendant's motion to dismiss, and the sentencing of defendant to probation. We reverse on the ground that defendant's motion to suppress should have been granted because the seizure of the films used to convict the defendant was a violation of defendant's constitutional rights. This disposition of the case makes it inappropriate to discuss the remaining assigned errors.

On March 3, 1983, Omaha police officer Joseph Nepodal

entered the Muse Theatre and watched a double feature, "Young and Innocent" and "The Erotic Adventures of Lolita." The officer then compiled an "Affidavit of States [sic] Witness," setting forth his synopsis of the movies. On the basis of this affidavit an Omaha municipal judge issued an order pursuant to Neb. Rev. Stat. § 28-828 (Reissue 1979) requiring the defendant to deliver to the State of Nebraska one copy of each of the movie films. Section 28-828 provides:

In any proceeding, civil or criminal under sections 28-807 to 28-829, the party charged with possession of any obscene material shall be required, upon application by petitioner and order of the court, to provide one copy of such material to petitioner to be used in the preparation and trial of such proceedings. Failure to comply with this section shall be punishable as contempt of court.

On the next day, March 4, Officer Nepodal and two other officers entered the defendant's theater at 11:35 a.m., 35 minutes after it opened. They had the court order issued pursuant to § 28-828 and an arrest warrant for the defendant. Defendant was not at the theater, and the officers, on hearing this, told the ticket seller and projectionist they were police officers and were at the theater to take the films. The officers did, in fact, seize both films. Defendant Skolnik, to whom the court order was directed, was not present at the theater at any time the officers were at the theater on March 4. Defendant was not arrested at the theater, nor was the court order ever served on him. The officers did not have a search warrant.

The issue of constitutionality of § 28-828 is not before us, because, while the court order issued pursuant to that statute may comply with the statute, the methods pursued by the police officers did not comply with the statute, in that the court order was never served on defendant and the films were never delivered to the officers by defendant. The films were nevertheless seized by the officers. It is clear that the officers did not comply with the terms of § 28-828, because the facts are undisputed that defendant Skolnik, "the party charged with possession of . . . [the] obscene material," was never personally asked or required to deliver a copy of the films in question to the State of Nebraska. The statute in question, § 28-828, never

came into play, therefore, and we can consider that statute no further.

For a seizure to be valid it must be made pursuant to a validly authorized search warrant, or in response to sufficient exigent circumstances or other recognized exceptions. The seizure of the two films in this case violated the defendant's rights under article I, § 7, of the Nebraska Constitution and under the fourth amendment to the U.S. Constitution. The police officers had no search warrant, and there were no exigent circumstances or other recognized exceptions which justified this seizure. We set out in *State v. Rice*, 188 Neb. 728, 741, 199 N.W.2d 480, 488 (1972), *cert. denied* 430 U.S. 947, 97 S. Ct. 1584, 51 L. Ed. 2d 795 (1977): "Search pursuant to warrant is to be much preferred to search without warrant, and a warrant should be applied for absent the exceptions applicable to exigent circumstances and other recognized exceptions."

The State does not contend that the police officers had a valid search warrant. Admittedly, they did not. The State does, however, argue that all of the necessary requirements of the fourth amendment to the U.S. Constitution and of article I, § 7, of the Nebraska Constitution for a valid seizure were complied with in the process of obtaining the § 28-828 order.

Article I, § 7, of the Nebraska Constitution provides, as does the fourth amendment to the U.S. Constitution, as follows:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Nothing in the order issued pursuant to § 28-828 described a place to be searched or authorized a thing to be seized. The judge signed an order requiring the defendant to provide a copy of the material described. An order requiring a defendant to provide something, under threat of contempt of court, is not constitutionally equivalent to a warrant allowing the State to search a place and seize a thing.

In oral argument the State implied that the circumstances surrounding this seizure made it an exception to the search

warrant requirement. Although it need not be discussed in detail herein, the area of the law dealing with seizure of films and books is complicated, because the constitutional protections of the first and fourth amendments to the U.S. Constitution intertwine, as do §§ 5 and 7, article I, of the Nebraska Constitution. The constitutional protection against unreasonable searches and seizures is intensified by our jealous protection of free speech, freedom of expression, and our protection of a free press. This is a case which falls within this intensified protection, because it concerns a film that was seized and because seizing that film prevented its showing.

If the film were a bomb or an illegal drug, the obviousness of its illegality might allow its seizure on sight without a warrant, but because the "illegality" of a film is not so obvious, and because seizure prevents expression, both the U.S. Constitution and the Nebraska Constitution demand greater protection both for the issuing of warrants and seizure without a warrant when films are the subject.

In *Roaden v. Kentucky*, 413 U.S. 496, 93 S. Ct. 2796, 37 L. Ed. 2d 757 (1973), a sheriff went to a drive-in theater, concluded the film shown was obscene, arrested the manager, and seized the film incident to arrest. The Supreme Court stated at 504-05:

Seizing a film then being exhibited to the general public presents essentially the same restraint on expression as the seizure of all the books in a bookstore. Such precipitate action by a police officer, without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards. The seizure is unreasonable, not simply because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness. The setting of the bookstore or the commercial theater, each presumptively under the protection of the First Amendment, invokes such Fourth Amendment warrant requirements because we examine what is "unreasonable" in the light of the values of freedom of expression. . . .

Moreover, ordinary human experience should teach that the seizure of a movie film from a commercial theater with regularly scheduled performances, where a film is being played and replayed to paid audiences, presents a very different situation from that in which contraband is changing hands or where a robbery or assault is being perpetrated. In the latter settings, the probable cause for an arrest might justify the seizure of weapons, or other evidence or instruments of crime, without a warrant.

While Officer Nepodal did approach a neutral magistrate, he, like the sheriff in *Roaden*, did not have a search warrant, did not seize the films based on a procedure " ' "designed to focus searchingly on the question of obscenity," ' " *id*. at 503, and, unlike the sheriff in *Roaden*, Officer Nepodal did not seize these films incident to a lawful arrest. Since the U.S. Supreme Court found the "exigent circumstances" in *Roaden* insufficient, it is clear that the alleged "exigent circumstances" in this case fall far short of what is necessary to permit a seizure of films without a warrant.

Any other "exception" to the warrant requirement must be viewed with the distinction between search and seizure in mind. This court has specifically separated these two concepts. We said in *State v. Searles*, 214 Neb. 849, 853, 336 N.W.2d 571, 575 (1983), "Such activity [a seizure] does not constitute a search," and in *State v. Edwards*, 197 Neb. 354, 357, 248 N.W.2d 775, 777 (1977), " 'The search was private, and the ensuing warrantless seizure was made upon probable cause under exigent circumstances. Neither the search nor the seizure violated appellant's Fourth Amendment rights.' "

We are here concerned with an illegal seizure, not an illegal search; and while inevitable discovery, no privacy interest, and such claims may get an officer into the theater and past a claim of illegal search, the *seizure* of the object cannot be done without probable cause. A gun or a body may present probable cause on sight, but films do not, because that determination must be made by a neutral magistrate making an inquiry designed to focus searchingly on the issue of obscenity. See *Marcus v. Search Warrant*, 367 U.S. 717, 81 S. Ct. 1708, 6 L. Ed. 2d 1127 (1961).

The seizure of the films violated the defendant's constitutional rights, and the admission of the seized films in evidence requires reversal of the defendant's conviction. Defendant's motion to suppress should have been granted.

CONVICTION AND SENTENCE VACATED.

REVERSED AND REMANDED FOR A NEW TRIAL.

SHANAHAN, J., concurs in the result.