STATE OF NEBRASKA, APPELLEE, V. TAMARA HANSEN, APPELLANT.
375 N.W.2d 605

Filed October 25, 1985.   No. 84-978.

Hal W. Anderson of Berry, Anderson, Creager & Wittstruck, for appellant.

Robert M. Spire, Attorney General, and Timothy E. Divis, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

Tamara Hansen appeals from a judgment entered by the district court for Scotts Bluff County, Nebraska, which, after trial by jury, found Hansen guilty of possession of cocaine, in violation of Neb. Rev. Stat. § 28-416(3) (Reissue 1979). This is a Class IV felony punishable by up to 5 years' imprisonment or a fine of $10,000, or both such imprisonment and fine.

Hansen assigns two errors. The first is that the district court erred in failing to suppress physical evidence unlawfully seized from her vehicle. The second is that the district court erred in failing to find that the State had not adduced sufficient evidence to establish guilt beyond a reasonable doubt. We have reviewed the record and believe that both assignments must be overruled and the judgment of conviction affirmed.

The charges against Hansen arose out of an incident occurring on September 2, 1984. Police Officers Mayo and Rezac of the Scottsbluff Police Department were working the midnight shift. At approximately 2:30 a.m., while near Lacy Park, a city park located in the city of Scottsbluff, their attention was drawn to a pickup truck located in the park with its dome light on. The park is subject to an 11 p.m. curfew, and, therefore, the officers approached the vehicle in order to determine why the vehicle was violating the 11 p.m. curfew.

After driving into the park with the squad car's lights turned off, Officer Mayo parked his police car some 10 feet to the right side and slightly to the rear of the pickup. Both Officers Mayo and Rezac alighted from the police cruiser and approached the pickup. Mayo went toward the driver's side while Rezac approached the passenger's side.

Officer Mayo testified at trial that when he got to the truck, he noticed a male and a female inside. Both occupants had open containers of beer in their laps. The officers both testified that they reached the pickup and peered through the windows. Officer Mayo said that he saw that Hansen had a brown, shiny object but could not see what she was doing with it except holding it. Officer Rezac testified that he observed that Hansen had a flat, brown item in one hand and a razor blade in the other. "[S]he was holding both of them in her hand as if she were going to be in the process of using them in the future." Rezac also testified that the passenger had in his hand a plastic bag or a small item that he was playing with.

Evidently, both officers knocked simultaneously on the window they were nearest. Mayo testified that he knocked on the window and, either as he opened the door or just before he opened the door, saw Hansen throw a shiny, brown object to the floor. The object looked like a stone one-quarter to one-half inch in thickness and approximately 2 to 3 inches in diameter. At nearly the same time, Rezac had knocked on the passenger's window and identified himself. Mayo heard Rezac order the male passenger not to put an item in his mouth. Rezac then reached through the open window to try to prevent the passenger from swallowing the packet. At this time Mayo had the driver's door open and, in order to assist his partner, jumped over Hansen toward the passenger. Mayo testified that Hansen began to strike him with her elbows and hands and her beer bottle. Hansen denies that she struck the officer. The efforts of the police officers, however, were futile because the passenger did swallow the object, a plastic or cellophane bag containing a white substance.

As Mayo got out of the vehicle, he picked up Hansen's bottle of beer and seized the brown, shiny object, along with the razor blade which he discovered on the floorboard of the driver's side

of the truck. When Officer Mayo picked the brown object and razor blade off the floor, he made a statement to Officer Rezac that the occupants were "cutting coke." Mayo then asked Hansen for identification. Hansen said that it was in her purse, which was located on the floorboard on the driver's side of the truck. Mayo then picked up the purse and opened the center portion. As he was looking in the purse for identification, he noticed a small vial in a side pocket. The vial was yellowish-brown with a black top. It contained a white powder which appeared to be a controlled substance. Mayo testified he suspected it was cocaine. At about this time Mayo read Hansen her rights and placed her under arrest. The vial was later scientifically tested and found to contain cocaine.

The appellant, Hansen, the driver of the vehicle, testified that she had gotten off work at about 2 a.m. She worked at a bar and had offered to drive a patron home. After stopping briefly at a party, she felt she had to go to the toilet, and so she and her passenger stopped at the Lacy Park restroom building for that purpose. She testified that the passenger stayed in the truck while she used the toilet facilities, and when she returned to the truck, she saw a white, shiny object on the floorboard of the passenger's side of her truck. She testified that she picked it up and looked at it. Hansen maintained at trial that she had no idea that a razor blade was anywhere in the truck. She also testified that while at the party she had left her purse in her unlocked pickup and, disclaiming all knowledge of the vial of cocaine, testified that the vial had possibly been planted in her purse.

Hansen moved, at a suppression hearing, to suppress the shiny stone, the razor blade, and the vial of cocaine. The trial court overruled the motions, and the evidence was admitted at the trial on the merits.

With regard to Hansen's second assignment of error, that the evidence was insufficient, we note that while it is assigned as error it is not discussed in her brief. It has long been a rule in this state that errors assigned but not discussed will not be considered by this court on appeal. See *Johnson v. Johnson*, 209 Neb. 317, 307 N.W.2d 783 (1981). We note, however, in passing, that an examination of the record discloses more than

sufficient evidence from which a jury could find Hansen guilty of the crime charged, beyond a reasonable doubt.

We turn, then, to the first assignment, concerning the district court's failure to suppress the evidence seized from Hansen's vehicle. In doing so we must examine the items individually.

We turn first to the razor blade and the stone. Both of these items were in plain view. It is clearly established that under appropriate circumstances a police officer may seize evidence in plain view without a warrant. See, *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), *reh'g denied* 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120; *Texas v. Brown*, 460 U.S. 730, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983).

In *State v. Haselhorst*, 218 Neb. 233, 236, 353 N.W.2d 7, 10 (1984), we stated:

> Three requirements must be satisfied to uphold a warrantless search and seizure from an automobile under the plain view doctrine. First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. Second, the officer must discover the incriminating evidence "inadvertently," i.e., he may not know in advance the location of the evidence and intend to seize it without obtaining a warrant, relying on the plain view exception only as a pretext. Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. *Texas v. Brown, supra.*

The initial intrusion in this case was based upon the fact that Hansen's pickup truck was parked in a city park more than 3 hours after the curfew. The officers certainly had a right to stop the vehicle and determine why the curfew law was being violated. The first requirement is therefore satisfied.

Likewise, the evidence establishes that the second requirement is also satisfied. There is no evidence that the officers approached the vehicle knowing that there was drug paraphernalia in plain view. The discovery of the razor blade and the stone was clearly inadvertent and as a result of the officers' attempting to investigate a curfew violation.

And, as to the final requirement, in *Texas v. Brown, supra* at 742, it was said that in order to establish probable cause to associate property with criminal activity, all that is required is that

> the facts available to the officer would "warrant a man of reasonable caution in the belief," [citation omitted] that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.

See, also, *State v. Haselhorst, supra.*

We believe the evidence satisfies that requirement. Officer Rezac saw the stone and razor blade being held by Hansen through the window. Officer Mayo saw the stone through the window and the razor blade when he dove into the pickup to assist his partner. Both officers had had some training and experience in drug and drug paraphernalia detection and were aware that it was not uncommon to "cut cocaine" with a razor blade and a stone. This, added to the fact that Hansen's passenger swallowed a small package containing white powder when asked not to do so by the officers, further supported the " 'practical, nontechnical' probability that incriminating evidence [was] involved." The court, therefore, did not commit error when it overruled Hansen's motion to suppress the razor blade and stone.

That, then, leaves us with the search of the purse and the subsequent finding of the vial of cocaine. The decision of the U.S. Supreme Court in *United States v. Ross,* 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), seems to answer this question and supports fully the action taken by the district court. In *Ross, supra* at 825, the U.S. Supreme Court said: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." We have likewise adopted the *Ross* rule. In *State v. McGuire,* 218 Neb. 511, 514, 357 N.W.2d 192, 195 (1984), quoting from *Ross,* we said:

> When a legitimate search is under way, and when its

purpose and its limits have been precisely defined, nice distinctions between . . . glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

See, also, *State v. Haselhorst, supra.*

Having determined that Hansen was in possession of paraphernalia commonly connected with cocaine and that her passenger had swallowed a small bag containing a white powder, Officer Mayo certainly had the requisite probable cause necessary to search Hansen's lawfully stopped vehicle. Since the object of his search was a controlled substance which could have been secreted in a small container, he was fully justified in examining the purse for drug contraband. Such a search under the facts as presented cannot be said to be unreasonable within the meaning of the fourth amendment to the U.S. Constitution. See, *State v. Booth*, 202 Neb. 692, 276 N.W.2d 673 (1979); *United States v. McHugh*, 575 F. Supp. 111 (D.R.I. 1983); *United States v. Mendoza*, 722 F.2d 96 (5th Cir. 1983); *United States v. Steele*, 727 F.2d 580 (6th Cir. 1984); *United States v. Shepherd*, 714 F.2d 316 (4th Cir. 1983).

We believe that the district court was correct in determining that there was no fourth amendment violation of Hansen's rights and that the evidence was therefore properly admissible. On that basis the conviction must be affirmed.

AFFIRMED.