STATE OF NEBRASKA, APPELLEE, V. ELIZABETH A. HOLMAN, APPELLANT.

380 N.W.2d 304

Filed January 24, 1986.   No. 85-369.

Dennis R. Keefe, Lancaster County Public Defender, and Coleen J. Nielsen, for appellant.

Robert M. Spire, Attorney General, and Dale A. Comer, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

The defendant, Elizabeth A. Holman, was convicted by a jury for theft by receiving stolen property. The offense consists of receiving, retaining, or disposing of stolen movable property of another knowing or believing that it has been stolen, unless the property was received, retained, or disposed of with intention to restore it to the owner. Neb. Rev. Stat. § 28-517 (Reissue 1979). The defendant was sentenced to a term of 20

months to 3 years.

On appeal the defendant has assigned three errors: (1) The trial court erred in overruling defendant's motion to suppress evidence relating to the tires because they were improperly seized; (2) The trial court erred in overruling the defendant's motion in limine and allowing the State to elicit testimony as to defendant's silence when asked about the tires; and (3) There was insufficient evidence as a matter of law to support conviction.

The record shows that on March 26, 1984, at approximately 12:45 a.m., the defendant was driving a 1976 Plymouth automobile eastbound on B Street in southwest Lincoln, Nebraska, when she was observed by a Lincoln police officer, Mark Domangue, at the corner of 8th and B Streets. Officer Domangue noted that the front license plate was missing from the automobile and that the trunk lid was up and there were large tires stacked in the trunk. Officer Domangue then turned his cruiser around and activated his red lights. He followed the vehicle southbound on 8th where the vehicle ran the stop sign at A Street. The vehicle continued without stopping for the police officer, ran another stop sign on 7th at A Street, and eventually stopped between 7th and 8th on A Street.

After the vehicle had stopped, Officer Domangue approached the defendant's car and saw the four new, large truck tires in the trunk. Officer Domangue asked the defendant for her license and registration, and also asked her whose tires were in the trunk. The defendant gave the officer her license and a certificate of title and told the officer that they were not her tires but that she knew who the owner was. The defendant also stated that she had just picked the tires up. The officer asked the defendant whose tires they were, and she did not say anything.

The officer next asked the defendant to step out of her car, whereupon they walked to the rear of the vehicle and the officer again asked about the tires. The defendant gave the same responses.

The officer then placed the defendant in the back seat of his cruiser and ran a driver's history check, a check for warrants, and a registration check, which is the normal procedure for a

traffic offense stop. The officer was informed that the rear plate on defendant's car was registered to another vehicle, there was an outstanding out-of-county warrant issued for the defendant, and that the defendant's driver's license had been suspended in Nebraska. The officer at that point called for a wrecker to tow the defendant's car and placed the defendant under arrest for driving on a suspended license and for the outstanding warrant.

The wrecker arrived, and the vehicle, with the tires still in the trunk, was towed to Whitney's wrecker company. At the time the car was towed, the officer did not have any report that tires of that type had been stolen, but he requested that the towing company release the tires only upon proper proof of ownership. The officer also made a report on the incident and requested that the tires be checked to determine whether they were stolen property.

On March 29, 1984, Officer Domangue met with Terry Klein of the T.O. Haas Tire Company at Whitney's wrecker company to look at the tires. The T.O. Haas Tire Company is located about 2 miles from where the defendant was stopped on March 26, 1984. Upon viewing the tires, Terry Klein believed that the tires belonged to T.O. Haas because that type of tire was not sold anywhere else in Lincoln. Klein later checked the inventory of T.O. Haas and found that four tires exactly like those he had seen at Whitney's were missing.

Based on these facts, a warrant was issued on April 5 for Elizabeth Holman's arrest, and on May 16, 1984, charges were filed.

The defendant contends that the sole reason for towing her vehicle was for the purpose of seizing the tires and that evidence seized in such a manner should be suppressed as violative of defendant's constitutional right against unreasonable search and seizure. U.S. Const. amend. IV; Neb. Const. art. I, § 7. At the same time, the defendant concedes that the officer had a valid reason to stop the defendant's vehicle and that the officer's viewing of the tires was inadvertent because they were large and clearly visible.

Generally, for a seizure of property to be valid it must be made pursuant to a validly authorized search warrant or under

exigent circumstances or under some other recognized exception. *State v. Skolnick*, 218 Neb. 667, 358 N.W.2d 497 (1984). The failure to have a search warrant when evidence is seized does not necessarily require that the evidence be suppressed. *State v. Searles*, 214 Neb. 849, 336 N.W.2d 571 (1983). Furthermore, a motion to suppress can only be made by a person who had a reasonable expectation of privacy in the area searched and where the evidence was seized. See, *State v. Van Ackeren*, 200 Neb. 812, 265 N.W.2d 675 (1978); *State v. Martinez*, 198 Neb. 347, 252 N.W.2d 630 (1977). There could be no reasonable expectation of privacy as to property in plain sight in a vehicle's completely open trunk while driving on a public thoroughfare.

An officer may seize evidence and contraband without a warrant if it is discovered inadvertently while it is in plain view and the officer has a right to be in the place where he has such a view. *State v. Searles, supra*; *State v. Holloman*, 197 Neb. 139, 248 N.W.2d 15 (1976); *State v. Romonto*, 190 Neb. 825, 212 N.W.2d 641 (1973). In effect, such activity is not a search and no warrant is required. *State v. Resler*, 209 Neb. 249, 306 N.W.2d 918 (1981); *State v. McCune*, 189 Neb. 165, 201 N.W.2d 852 (1972), *cert. denied* 412 U.S. 954, 93 S. Ct. 3002, 37 L. Ed. 2d 1007 (1973). This is known as the plain view exception to the warrant requirement.

In *State v. Haselhorst*, 218 Neb. 233, 236, 353 N.W.2d 7, 10 (1984), we followed the U.S. Supreme Court decision in *Texas v. Brown*, 460 U.S. 730, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983), and enumerated the three criteria for a warrantless, plain view search.

> First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. Second, the officer must discover the incriminating evidence "inadvertently," . . . . Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure.

The defendant in the present case does not claim that the first two criteria were not met, but contends that even though a woman's driving around with four large truck tires in the trunk

may seem rather odd, it "does not give rise to one of a criminal nature. Therefore, the plain view exception to the warrant requirement in this case simply does not apply." Brief for Appellant at 14.

The defendant's interpretation of the immediately apparent requirement of the plain view doctrine is incorrect. In *State v. Haselhorst, supra* at 237, 353 N.W.2d at 10, we held that a seizure of property that is in plain view " ' "is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity" ' . . . ." Furthermore, we stated that

> probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," [citation omitted] that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.

*Id.* (citing *Texas v. Brown, supra* at 742).

The evidence in this case shows that Officer Domangue observed the defendant's car with four very large truck tires in the trunk at 12:45 a.m. within 2 miles of the Haas tire company. When he turned on his red lights and attempted to stop the vehicle, the defendant violated two stop signs before pulling over. When asked whose tires were in the trunk, the defendant responded that they were not hers and that she knew who they belonged to but refused to state who owned the tires. Under a practical, nontechnical standard these facts gave rise to probable cause to associate the tires with criminal activity so that seizure for further investigation was lawful.

The defendant's second assignment of error relates to the trial court's refusal to exclude Officer Domangue's testimony concerning the defendant's answers and eventual silence when asked who the tires belonged to. The defendant contends that testimony as to her statements and silence in response to the officer's questions should have been suppressed because her freedom was restricted in such a manner that she was in custody

and should have been given the warnings required by *Miranda v.Arizona*, 384 U.S. 436, 88 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prior to the questioning. The defendant also argues that the officer's testimony as to her silence violated her fifth amendment right against self-incrimination.

In *Miranda v. Arizona, supra*, the U.S. Supreme Court established procedural safeguards to protect a citizen's right against self-incrimination. However, the *Miranda* decision distinguished preliminary investigation from custodial interrogation. *Miranda* applies only to interrogations initiated by law officers after a person has been taken into custody or deprived of his freedom in any significant way. *State v. Parsons*, 213 Neb. 349, 328 N.W.2d 795 (1983). "The Miranda procedures . . . were not meant to preclude law enforcement personnel from performing their traditional investigatory functions such as general on-the-scene questioning . . . ." *State v. Bennett*, 204 Neb. 28, 35, 281 N.W.2d 216, 220 (1979). Thus, "In on-the-scene investigations the police may interview any person not in custody and not subject to coercion for the purpose of determining whether a crime has been committed and who committed it." *State v. Dubany*, 184 Neb. 337, 342, 167 N.W.2d 556, 559 (1969); *State v. Mattan*, 207 Neb. 679, 300 N.W.2d 810 (1981).

The facts in this case do not support the defendant's contention that testimony as to her statements and silence should have been excluded. Officer Domangue was justified in stopping the defendant's vehicle because it did not have a front license plate and also because the defendant ran two stop signs. Upon stopping a vehicle for a traffic violation, it is lawful to detain the driver while checking the registration and the license of the driver. The U.S. Supreme Court recently held that roadside questioning of a driver detained pursuant to a routine traffic stop does not continue custodial interrogation for purposes of *Miranda. Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). The Court reasoned that even though a driver is detained pursuant to a traffic stop, there must be some further action or treatment by the police to render the driver "in custody" and entitled to *Miranda* warnings. *Berkemer*, 104 S. Ct. at 3151. There was no such action or treatment in the present case, so testimony as to the

defendant's statements and silence was admissible.

Lastly, the defendant contends that there was insufficient evidence to support conviction. The law in Nebraska is clear as to the review of the evidence in a criminal case to determine whether it is sufficient to support a guilty verdict. This court will not resolve conflicts in the evidence, pass upon the credibility of the witnesses, determine the plausibility of explanations, or weigh the evidence. A verdict will be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Ewing, ante* p. 462, 378 N.W.2d 158 (1985); *State v. Huffman*, 214 Neb. 429, 334 N.W.2d 3 (1983). Furthermore, this court will not interfere with a guilty verdict based upon evidence in a criminal case unless that evidence is so lacking in probative force that it can be said that, as a matter of law, the evidence is insufficient to support a verdict of guilty beyond a reasonable doubt. *State v. Pierce and Wells*, 215 Neb. 512, 340 N.W.2d 122 (1983); *State v. Huffman, supra.*

The fact that the defendant was driving around at 12:45 a.m. with four large truck tires in the trunk of her vehicle was, at the outset, a suspicious circumstance. The delay in stopping the vehicle after the officer had turned on his red lights was an additional factor. The refusal to disclose the ownership of the tires, after stating that they did not belong to her but that she knew who the owner was, was a highly incriminating circumstance. The evidence was sufficient, if believed, to sustain a finding of guilty of theft by receiving stolen property beyond a reasonable doubt. It cannot be said that the evidence in this case was so lacking that, as a matter of law, it was insufficient to support the verdict.

The judgment of the district court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurring in the result.

I concur in the result reached by the majority in this case. I write separately, however, because I do not concur in that portion of the majority opinion which suggests that the officer had a basis either to stop the appellant or to arrest her because he observed four very large truck tires in the trunk at 12:45 a.m. The presence of the tires in the trunk was of no consequence in

this case. Neither was the fact that appellant, when asked about the tires, replied that they were not hers but she knew whose they were. See *Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979).

The officer stopped the appellant because he observed appellant did not have a proper license plate, a violation of law. Upon stopping the vehicle and making a check, he determined that there was an outstanding warrant for her arrest. Having once arrested the appellant, there was nothing else to do with the vehicle except secure it by impounding it. And when, later, it appeared that the tires which were in plain view were stolen, the officer obviously had a right to take them into possession. That is all that is involved in this case.